MULLINS *v.* CITY OF LITTLE ROCK.

Opinion delivered October 29, 1917.

1. LOCAL IMPROVEMENTS—CONSTITUTIONAL LIMITATION UPON.—The only constitutional limitation upon the legislative power with respect to the creation of local improvement districts, is that the taxation of property in districts situated wholly within cities and towns must rest in the consent, actually ascertained, of a majority in value of the owners of real property, within the district. There is a further limitation however, that the amount of the tax must not exceed the special benefit derived, and also that the imposition of the tax must be uniform and free from unjust discrimination.

2. LOCAL IMPROVEMENTS—DISTRICT INSIDE CITY, IMPROVEMENT OUTSIDE.—The Legislature has authority to create an improvement

district lying wholly within a city, to construct an improvement situated outside the city limits.

3. LOCAL IMPROVEMENT—ENJOYMENT BY PUBLIC.—An improvement may be a local one so as to justify local assessments where there is a special and peculiar benefit inuring to the adjoining property, even though the general public enjoys a degree of benefit from the improvement.

4. LOCAL IMPROVEMENT—LEGISLATIVE DETERMINATION.—The legislative determination of the character of an improvement as a local one, is conclusive, unless arbitrary and unfounded in reason.

5. LOCAL IMPROVEMENT—OUTSIDE AID.—The Legislature may create a local improvement, and provide for financial assistance to be rendered it in the construction of the improvement, by the county.

6. LOCAL IMPROVEMENT—BOUNDARIES.—The action of the city council in fixing the boundary of a local improvement district is conclusive, unless obviously erroneous and arbitrary.

7. LOCAL IMPROVEMENT—BRIDGE ACROSS RIVER—VALIDITY OF STATUTE CREATING.—Act of 1915, p. 1346, authorizing the organization of improvement districts in Pulaski County for the purpose of raising money to aid the county to build, repair, reconstruct, strengthen, alter or widen bridges across the Arkansas River between the cities of Little Rock and Argenta, *held* valid.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*R. E. Wiley* and *Marvin Harris,* for appellant.

1. The act violates Art. 19, § 27, Constitution of Arkansas. The Legislature can not authorize the organization of a district in a city to make an improvement outside of the city. 50 Ark. 116, 125; Kirby's Digest, § 5674; 103 Ark. 269; 67 Ark. 30, 37, 39; 246 Ill. 43, etc.

2. The bridge is not a local improvement, therefore special assessments can not be levied because contrary to § 5, art. 16, Constitution. 9 Heisk. 349; 24 Am. Rep. 308, 34 L. R. A. 725; 149 Ill. 310, 24 L. R. A. 412; 92 N. E. 586; 102 Ill. App. 18; 22 Minn. 444; 84 Ark. 257; 104 *Id.* 425; 70 *Id.* 451; 181 U. S. 324; 67 Ark. 30, 39, 40.

3. Special assessments can not be imposed to pay for the general improvement of the city. 50 Ark. 116, 57 *Id.* 554. If this bridge is not primarily for a county purpose, the county court has no right to expend the county's

money on it, and if primarily for a county purpose then
it is a general improvement for the benefit of the entire
county, and its cost can not be specially assessed against
a part only of the county's territory. 65 Penn. St. 146;
3 Am. St. Rep. 615; 69 Penn. St. 352; 8 Am. St. Rep.
255; 49 L. R. A. 757; 11 La. Ann. 338; Farnum on Waters,
746; 170 Ill. 436; 48 N. E. 922; 11 S. W. 84, 467.

4. The assessments will be unequal and not uniform
because no part of Argenta is included. 48 Ark. 370; 57
Ark. L. Rep. 70.

*Rose, Hemingway, Cantrell, Loughborough &
Miles,* for appellees.

1. Act 330, Acts 1915, supplies all necessary statu-
tory authority lacking and all objections and defects
pointed out in 113 Ark. 590 and 114 *Id.* 324 were removed.
The proceedings under the Act are not opposed to the
provision of the Constitution authorizing districts in
cities and towns to be formed only on the consent of a
majority of the property owners. It is not violative of
Art. 19, § 27. 103 Ark. 269; 87 *Id.* 346; 118 *Id.* 127.

2. It is a local improvement conferring special
benefits. 96 Ark. 410; 106 *Id.* 115; 113 *Id.* 193; 170 U. S.
304; 56 N. W. 41; 23 *Id.* 222; 39 Barb. 266; 38 Ore. 432.
The cases cited by appellant arose under the peculiar
statutes of those States. The decisions of this State sus-
taining special assessments on an *ad valorem* basis to
improve roads and build bridges are sustained by the
great weight of authority in other States. 76 N. E. 620;
34 La. Ann. 342; 181 Mass. 463; 68 N. J. 118; 158 N. Y.
438; 22 Wash. 106; 40 Wis. 315 and others. See also,
170 U. S. 304; 56 N. W. 41; 63 Pac. 2; 39 Barb. 266, as
to bridges on streets of cities.

3. The assessment of benefits is not necessarily
unequal and uniform, as the property in Argenta would
necessarily be specially benefited and is not assessed. The
district does not pay the entire cost of the bridge, but is
to aid the county to defray the cost. In nearly all districts
there is a zone of property beyond the limits of the dis-

trict that is benefited. 188 S. W. 822; 48 Ark. 370; 57 A. L. R. 70.

*Moore, Smith, Moore & Trieber, Amici Curiae.*

1. The bridge is a local improvement. 67 Ark. 30; 113 *Id.* 193; 96 *Id.* 410; 89 *Id.* 513. The Act is valid. 104 Ark. 425.

McCULLOCH, C. J. The city council of Little Rock, by an ordinance duly enacted upon the petition of property owners as prescribed by statute, has created a local improvement district "for the purpose of aiding the County of Pulaski in building a bridge across the Arkansas River, said bridge to land on Broadway street in the city of Little Rock, Arkansas." A majority of the owners of real property in the district petitioned for the improvement and the commissioners have been appointed by the city council and are about to proceed with the assessment of benefits and the levying of assessments to pay for the improvement. Appellant is the owner of real property in the district and instituted this action in the chancery court to restrain further proceedings in the assessment of benefits, levying of assessments, issuing bonds and the construction of the improvement through the agency of this improvement district, on the ground that there is no lawful authority for the organization of a local improvement district for the purpose named. The chancery court denied relief and an appeal has been prosecuted to this court from the decree.

Another district was once formed for the same purpose mentioned in the organization of this district, but this court held that under the law, as it then stood, there was no authority for the formation of a local improvement district to aid in the construction of a bridge connecting two cities. *Mullins* v. *Little Rock,* 113 Ark. 590. The property owners made another attempt to further the improvement by organizing a district to construct one-half of the bridge across the Arkansas River between the cities of Little Rock and Argenta, and this court held that the effort was futile, and that the formation of the

district for that purpose was void. *Mullins* v. *Bridge Improvement District,* 114 Ark. 324. In each of those cases the decision was based upon the lack of legislative authority to form an improvement district for the purposes named. In the first case it was held that the Legislature, in the enactment of the general statute authorizing the organization of improvement districts in cities and towns, had not conferred authority to form a district for the purpose of aiding another agency, such as the county, in constructing an improvement; and in the last case it was held that there was no legislative authority to form a district to build one-half of a bridge, or any part less than the whole. Since those cases were decided the General Assembly enacted a special statute applicable only to Pulaski County authorizing the organization of improvement districts in this county for the purpose of raising money to aid the county to "build, repair, reconstruct, strengthen, alter or widen, bridges across the Arkansas River between the cities of Little Rock and Argenta." Acts of 1915, p. 1346.

The first section of the act reads as follows:

"Districts may be organized in Pulaski County in the manner set forth in sections 5664 to 5742, of Kirby's Digest, and the amendments thereto, for the purpose of raising money to aid the county of Pulaski to build, repair, reconstruct, strengthen, alter or widen, bridges across the Arkansas River between the cities of Little Rock and Argenta, which the county has heretofore built or may hereafter undertake to build, to the extent petitioned for and under such restrictions as may be prescribed, in the petition of the majority in value of the property owners and in such event, it shall be the duty of the commissioners, if they can make satisfactory arrangements with the county court of Pulaski County within the limits of the authority conferred by such petition, to issue the negotiable interest-bearing bonds of the district to the amount prescribed in the petition, and to sell said bonds and turn the proceeds thereof over to said county court, to be used in the construction, reconstruction

repairing, strengthening, altering or widening of such bridge or bridges."

Section 2 of the act provides that when such bridge or bridges are proposed to be built, repaired, reconstructed, etc., the county court of said county shall appoint a commission composed of three persons whose duty shall be to locate and superintend the erection, reconstruction or repair of the proposed bridge. It is thus seen that legislative authority is conferred, as far as is possessed by the law-makers, to form an improvement district for the purpose mentioned in the organization of the present district.

The statute in question is not open to the objection that it attempts to amend or extend a statute by reference only to the title. *Common School District No. 13 v. Oak Grove Special School District,* 102 Ark. 411. Nor is the statute objectionable on the ground that it authorizes the appointment of two sets of commissioners, one by the county and the other by the city council. The question of extent of the authority of the respective sets of commissioners is not before us for determination and need not be decided until it properly arises. There may not arise any conflict in the authority attempted to be exercised by the respective boards in this instance.

(1) The only question presented, therefore, for our determination is whether or not the statute authorizing the formation of the district for the purpose named is valid, and the validity of the statute is challenged by appellant on several grounds. The Constitution of the State contains but one limitation upon legislative power with respect to the creation of local improvement districts, and that limitation is that the taxation of property in districts situated wholly within cities and towns must rest on the consent, actually ascertained, of a majority in value of the owners of real property. *Butler v. Fourche Drainage District,* 99 Ark. 100. In other respects the legislative will is supreme, at least as far as any express constitutional limitation is concerned. Of course, there is the further limitation that since the only justification for

the imposition of local assessments rests upon the enjoyment of special benefits to the property thus taxed, the amount of the tax must not exceed the special benefit derived; and also that the imposition of the tax must be uniform and free from unjust discrimination.

(2)    It is insisted, in the first place, that it is beyond the power of the Legislature to authorize the organization of an improvement district inside of a city or town to make an improvement situated outside of its limits. We decided in one of the former cases cited that a district could not be organized for the purpose of constructing such an improvement, but since then the Legislature has supplied the power, and we perceive no sound reason why it can not be done, for special benefits may inure to property within a given locality inside of the municipality, even though the improvement lies partly outside. The improvement now under consideration affords an apt illustration, for the property adjacent to a bridge spanning a river which forms the boundary between two cities may receive marked benefit from the improvement, even though the greater part of the improvement lies outside of the district and municipality. There is nothing in the Constitution which forbids the organization of such a district. In fact, the Legislature passed a statute many years ago authorizing the organization of improvement districts for the construction of waterworks and sewer systems with part of the improvement lying outside of the municipalities, and the validity of that statute has never been questioned, although this court had previously held that in the absence of such legislative authority it could not be done. *Rector* v. *Board of Improvement,* 50 Ark. 116. The Constitution places certain limitations, as before stated, upon the power to organize districts for "assessments on real property for local improvements in towns and cities," but we have construed that provision not to restrict the power to organize districts lying partly inside and partly outside of cities and towns. *Butler* v. *Fourche Drainage District, supra.* All that the framers of the Constitution meant was that the assessments on

real property in districts wholly within cities and towns must be based upon the consent of the majority in value of the property owners to be affected. It was not a grant of power, but a limitation to that extent upon the power of the lawmakers.

(3-4)     Again, it is urged that a bridge which forms part of a highway constitutes a general improvement which affects the whole public and can not be made the object of a local improvement district. There are decisions in other States to the effect that bridges, as well as other parts of public highways, can not be treated as local improvements, but this court has steadily held to the contrary. In fact, the most frequent applications of the improvement district laws in this State have been to the organization of districts for the purpose of improving streets and highways, and the power has scarcely ever been questioned. We have expressly held that a bridge situated either in a rural district or one situated inside of a city may be constructed as a local improvement. *Shibley* v. *Fort Smith & Van Buren District,* 96 Ark. 410; *Board of Directors* v. *Collier,* 104 Ark. 425; *Ferguson* v. *McLain,* 113 Ark. 193. That subject is fully discussed in the recent case of *Bennett* v. *Johnson,* 130 Ark. 507, where we reiterated the rule so often announced by this court that an improvement may be a local one so as to justify local assessments where there is a special and peculiar benefit inuring to the adjoining property, even though the general public enjoys a degree of benefit from the improvement. We held, too, that the legislative determination of the character of an improvement as a local one is conclusive, unless arbitrary and unfounded in reason, and that principle applies to the present case, because the statute under consideration is a special one and necessarily constitutes a legislative determination of the fact that bridges across the Arkansas river between the cities of Little Rock and Argenta may constitute local improvements. We can not say as a matter of law that that determination is such a manifest error as to call for judicial interference with the legislative will.

(5)   One of the most serious considerations in the case is whether or not the authority to levy assessments on adjacent property for the purpose of raising money to aid the county in the construction or repair of bridges, which presupposes that the benefits to be derived from the use of funds out of the county treasury does not overturn or render inconsistent the further determination of the lawmakers that the improvement is a local one so as to justify special assessments on the adjacent property. We think, though, that the better rule is to uphold the legislative determination to the extent that the improvement is local in its nature, even though the general public will receive benefits so as to justify expenditures of public funds.  That is just another way of saying, as we have often said heretofore, that an improvement may be local in its nature even though the general public enjoys a degree of the benefits.  We have, in fact, held that an improvement district may be organized to improve a public street in a city even though it is necessary to obtain public funds from the city in order to complete the improvement. *McDonnell* v. *Improvement District No.* 145, 97 Ark. 334. This conclusion is very forcibly and aptly stated by the Supreme Court of Minnesota, in dealing with the subject, as follows:

"Such improvements being public in their nature, it is rare that a case arises where the general public do not share to a greater or less extent in the benefits, though in some cases, as of alleys or lateral streets or sewers, the benefit may seem to be peculiarly local.  But it has never been contended that, in authorizing local assessments in pursuance of this constitutional provision, municipal authorities were to be limited to such improvements as are entirely local in their character.  The city at large is benefited, and at the same time special benefits in ordinary cases result to the owners of property adjoining or in the vicinity of the improvement.  If the special benefits to property so locally affected are equal to the cost of the work then an amount, not exceeding the whole cost may be assessed upon such property; but if the expense

thereof exceed such benefits, then the city at large should in any event bear a portion of the burden." *State* v. *District Court of Ramsey County,* 33 Minn. 295.

We are of the opinion, therefore, that it is not beyond the power of the Legislature to authorize a district to be formed for the purpose named.

(6) It is urged that the assessment of property in Little Rock will be unjust and discriminatory because no part of the property adjacent to the bridge on the Argenta side is to be taxed. Counsel cite in support of that contention decisions of this court holding that uniformity must be observed in assessments for local improvements and that where there is other property which would obviously be benefited by an improvement in the same degree, it can not be omitted from the assessment. *Davis* v. *Gaines,* 48 Ark. 370; *Heineman* v. *Sweatt,* 130 Ark. 70. Those were cases, however, where property lying inside of the improvement district was excluded from taxation, and where it was a demonstrable error to say that the omitted property would not be benefited. It is only in such instances as that that in a judicial review the legislative will may be overturned. The decision of this court in *Conway* v. *Miller County Highway & Bridge District,* 125 Ark. 325, is, we think, conclusive of this question. There must be a limit somewhere to the boundary of a district organized for the construction of an improvement of this kind, and the action of the city council in fixing the boundaries is conclusive, unless it is obviously erroneous and arbitrary. We can not say that the property on the other side of the river will be so obviously benefited in the same degree as the property on this side as to constitute an unjust discrimination in the assessment of the property in the district for the construction of the improvement.

(7) A majority of the court, therefore, reaches the conclusion, not without some difficulty, it is true, that there is no legal objection to be found to this district, or to the validity of the statute under which it is formed, and that the decree of the chancery court in so declaring was correct. The decree is, therefore, affirmed.

HART, J., (dissenting). Mr. Justice WOOD and myself are of the opinion that the forming of a local improvement district within the city for the purpose of constructing a bridge without the city limits is in plain violation of our Constitution.

Article 19, section 27, of our Constitution reads as follows:

"Section 27. Nothing in this Constitution shall be so construed as to prohibit the General Assembly from authorizing assessments on real property for local improvements in towns and cities under such regulations as may be prescribed by law, to be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected; but such assessments shall be *ad valorem* and uniform."

What the meaning is of the phrase "local improvement" is a question of law. In the case of *Crane* v. *Siloam Springs,* 67 Ark. 30, the court said:

"If we look for the technical or legal meaning of the phrase 'local improvement,' we find it to be a public improvement, which, although it may incidentally benefit the public at large, is made primarily for the accommodation and convenience of the inhabitants of a particular locality, and which is of such a nature as to confer a special benefit upon the real property adjoining or near the locality of the improvement."

In the case of *Hundley & Rees* v. *Commissioners, etc.,* 67 Ill. 559, the court had under consideration the assessments for the improvement and completion of Lincoln Park, which was situated partly in North Chicago and partly in Lake View. It was claimed that the proceedings in that case were had under a clause of the Constitution which provides that "the General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessments or by special taxation of contiguous property or otherwise." In determining whether the assessment for the park was a local improvement within the meaning of this

clause of the Constitution, Chief Justice Breese, who delivered the opinion of the court, said:

"From the evidence in the record, it appears this park is to be constructed within the corporate limits of two towns. The property in both the towns is assessed to defray the costs and expenses of acquiring the land and improving the park, and assessments are to be paid by the property owners of those towns, not to pay for lands lying inside, and improvements which are to be made within those towns, but for lands situated outside, and for improvements which are to be made outside the corporate limits of such towns. Thus, taxes paid on property in North Chicago would be expended for lands and improvements, some of them in North Chicago and some in Lake View, and taxes paid on property situated in Lake View would be expended in North Chicago. How, then, can it be contended that the creation of a park in Lake View by taxes in part paid by North Chicago would be a local improvement of North Chicago, or *vice versa* in Lake View?

"We must hold, therefore, that an assessment on property in North Chicago, for a local improvement in Lake View, or *vice versa,* is not within the meaning we are disposed to give this clause of the Constitution."

As far as the principles of law involved in this case are concerned, it will be seen that the clause of the Constitution of the State of Illinois granting to municipal corporations the power to make local improvements is in no respect different from our own Constitution. The holding of the Supreme Court of Illinois in the case just referred to is in accord with our previous decisions on the attempted organization of an improvement district to construct the identical improvement involved in this case. *Mullins* v. *City of Little Rock,* 113 Ark. 590, and *Mullins* v. *Commissioners of Bridge Improvement District No. 2,* 114 Ark. 324.

In the latter case the court held invalid an ordinance of the city establishing an improvement district to construct a portion of a bridge across the Arkansas river,

the portion to be constructed by the district to be to the center of the river which was the geographical boundary of the city. In that case it was proposed that the other half of the bridge should be erected by Pulaski County or by an improvement district in the city of Argenta. The court said:

"It might be possible for these different agencies to co-operate harmoniously in the construction of this improvement, so that, when their joint labors were completed, a bridge would be constructed, but, while this is possible, it is not certain. Even if satisfactory plans should be prepared and accepted, many questions of detail would arise, which would require conferences and concessions, and if these conferences were not held and concessions made, a condition would arise which the law has not contemplated nor provided for. Such improvement as a bridge must be situated wholly within the improvement district, and, in our opinion, this ordinance seeks to do indirectly what it is not permitted to do directly, and that is to aid in the construction of this bridge."

Thus it will be seen that here is a distinct announcement of this court that such an improvement as a bridge must be situated wholly within the improvement district which was organized to construct it. We presume under the views expressed in the majority opinion that this language is now considered *obiter dictum,* but it will be readily seen from the context that such is not the case because it was a part of the reasoning which led the court to the conclusion reached by it.

Again, in the case of *Loeffler* v. *Chicago,* 246 Ill. 43, 92 N. E. 586, 20 A. & E. Ann. Cas. 335, the court held that a sewer partly in one municipality and partly in another, for the use and benefit of both, is one continuous improvement and not two separate and distinct improvements. The court further held that the question of whether an improvement is local in character so that it may be made by special assessment is one of fact, but the determination of the local authorities is subject to review by the

courts. There it was contended that in order for the sewer in the city of Chicago to be of any benefit to the property within said city an outlet in the town of Cicero for such sewer was required. It was contended that while it is the general rule that a municipal corporation can only exercise its power within its corporate limits, still that this doctrine is subject to the qualification that such authorities may do those things which are necessarily and fairly implied or incident to the powers expressly granted to them. Therefore, it was insisted that a municipality must have the power to obtain an outlet for a sewer outside its corporate limits if no such outlet can be found within such limits. The court recognized this qualification to the general rule, and in commenting upon the cases announcing it, said:

"A reading of these decisions shows that they were based upon the theory that the outlet of the sewer was really a part of the improvement and was for the exclusive use of the municipality in question. Such, however, is not the case here. True, that part of the sewer in the town of Cicero is to furnish an outlet for that part of the sewer in the city of Chicago, but it is also for the use and benefit of land in Cicero adjacent to it. These cases are not in conflict with and do not overrule the general doctrine on this question laid down in *Hundley* v. *Lincoln Park, supra.*

"Counsel for appellees further argue that this improvement, considered as a whole, is a benefit to a special locality and will specially and peculiarly enhance the value of the property in that vicinity; that, therefore, under the definitions of 'local improvement' this improvement can be held to be one even though it is partially within two municipalities; that none of the decisions in this State except the Hundley case, *supra,* would conflict with such a holding. It is clear from an examination of the cases where this court has discussed the meaning of the phrase 'local improvement,' as used in said provision of the Constitution, it has been understood to be an improvement within and under the control of one munici-

pality." See also *Waukegan* v. *De Wolf,* 258 Ill. 374, 101 N. E. 532, Ann. Cas. 1914, B-538.

Again, in *Sylvester* v. *Macauley,* Wilson's Superior Court Reports, volume 1, page 19, the court had under consideration an ordinance for the grading of a street of the city of Indianapolis in the State of Indiana. A property owner refused to pay the assessment on the ground that that part of the street which was contiguous to her property was not in fact within the city. The court held that the city council had no power to construct its improvements beyond the city limits, and that no assessment would lie, therefore, against property owners abutting such improvements. A review of the authorities cited and a comparison of our clause of the Constitution with reference to local improvements with the clause of the Constitution of the State of Illinois relating thereto leads us to the conclusion that a local improvement can not be organized within the corporate limits of a city or town to construct an improvement outside of the corporate limits of such city or town. It is perfectly evident that the bridge when constructed will be of as much benefit to the property contiguous to it on the side of the river on which North Little Rock is situated as it is to the property near it on the side of the river on which Little Rock is situated. The cities of Little Rock and of North Little Rock are entirely disconnected at the points where it is proposed to span the river with the bridge. The purpose of the bridge is to connect these two cities so as to give the public unobstructed and convenient access from one city to the other. It will necessarily be as much used on the North Little Rock side of the river as on the Little Rock side. That is to say, the improvement will be as much used outside of the city of Little Rock as in it. The improvement will necessarily benefit adjoining property on the North Little Rock side of the river as much as it will benefit adjoining property on the Little Rock side of the river. It is evident that the primary purpose and effect of constructing the bridge is to benefit the public generally and not to improve the particular lo-

cality.   While it is true that if its purpose and effect is to improve a particular locality it is a local improvement, although there may be an incidental benefit to the public, yet it is equally true that if the primary object is to benefit the public it is not a local improvement, although it may incidentally benefit property in a particular locality. Hence we do not think the improvement is a local improvement in a town or city within the legal definition of the phrase "local improvement," as used in our Constitution.  It is only local in the sense that it is to be erected in a particular locality, and is nearer to some persons and property than to others.

Our conclusion on this point is decisive of the entire case, and we therefore forbear comment on other points discussed in the majority opinion.

WOOD, J., concurs in this dissent.