FENOLIO v. SEBASTIAN BRIDGE DISTRICT.

Opinion delivered December 22, 1917.

1. CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWER—CONSTRUCTION OF BRIDGE.—The act of 1913, page 380, as amended by the act of 1915, page 1337, which authorizes the construction and maintenance of a bridge across the Arkansas river from a street in Fort Smith to a point in Oklahoma on the opposite shore, *held* not to be unconstitutional as an attempt by the Legislature to delegate to property owners or voters its constitutional authority to make the law, since by the act the Legislature declared the law and only prescribed conditions under which the powers conferred might be exercised.

2. STATUTES — AMENDMENT — REVIVAL AND EXTENSION — CONSTITUTIONAL LIMITATIONS.—The act of 1915, page 1337, amending the act of 1913, page 380, authorizing the construction of a bridge

across the Arkansas river from the city of Fort Smith to the Oklahoma side of the river, and by the amendment, changing the time in which proceedings might be instituted, does not violate article 5, section 23, of the Constitution, which provides that a statute can not be amended by reference only.

3. STATUTES—CONSTRUCTION OF BRIDGE—EXISTENCE OF, AFTER PERIOD NAMED IN AMENDMENT.—A statute authorizing the construction of a bridge, where proceedings are instituted within two years, is not dead after the expiration of that time without the institution of those proceedings, and the time may be extended by amendment, though the power could not be exercised without the legislative extension.

4. STATUTES—OPERATIVE WITHIN CERTAIN TIME LIMIT—APPROVAL OF GOVERNOR.—A statute authorized the construction of a bridge by proceedings instituted within two years if certain acts were done by the property owners; *held* the two-year period began to run from the date the Governor approved the statute.

5. BRIDGES—CONSTRUCTION OF BRIDGE PARTLY WITHIN AND PARTLY WITHOUT THE STATE—LEGISLATIVE AUTHORITY.—The Legislature has authority to authorize the construction of a bridge extending across the Arkansas river from a point in this State to a point in another State, by an improvement district, and to provide for its construction to be paid for by assessments on the property benefited in the district, and the act of the Legislature is not void because a similar statute enacted by the Legislature of Oklahoma was void.

6. BRIDGES—STATUTE AUTHORIZING CONSTRUCTION—TAKING OF PROPERTY—COMPENSATION FOR TAKING PROPERTY.—A statute authorizing the construction of a bridge across the Arkansas river to a point in Oklahoma is not void for failing to provide a method of ascertaining the damages to property injured by the improvement; the constitutional provision against taking property without just compensation must be read into the statute.

7. BRIDGES—STATUTE AUTHORIZING CONSTRUCTION OF—DESCRIPTION.—A statute authorizing the construction of a bridge across the Arkansas river provided that it begin "at the foot of Garrison avenue," in the city of Fort Smith, held to mean that the bridge was merely a continuation of Garrison avenue, the statute also authorizing the construction of the bridge from a point back from the river a distance of three hundred feet, in order to get the proper height for the bridge in order to comply with government regulations.

Appeal from Sebastian Chancery Court, Fort Smith District; *W. A. Falconer,* Chancellor; affirmed.

*Holland & Holland,* for appellant.

1.    The Act had no legal existence after the two years limitation had expired, by reason of the failure to exercise the powers conferred, and the attempt to revive it in 1915 was in vain and unconstitutional. It could not be amended or revived. Const. Art. 5, § 23; 26 A. & E. Enc. L. (2d Ed.) 703; 90 Am. St. 153.    The Act was passed when it was approved by the Governor.    101 Ark. 473; 104 *Id.* 166.    At the time of the passage of the Act of 1915, the original Act was not in existence nor susceptible of amendment.

2.    The Bridge District was without authority to construct a bridge in Oklahoma.    The Act of Oklahoma of March 7, 1913, and the consent and contract became a nullity when the Act of 1913 was not made operative within the two years.

3.    The Act of Oklahoma is unconstitutional and void. Const. Okl., art. 18, § 1, and art. 5, § 23; 45 Okl. 440.

4.    The Bridge District had no authority to construct a bridge in Oklahoma, even if the Legislature of that State had consented.    114 Ark. 327; 81 *Id.* 293; 67 *Id.* 37; 50 *Id.* 130; 125 *Id.* 330.

5.    No provision in the Act to compensate owners of property abutting on Garrison Ave. for the change in grade in that street.    98 Ark. 205.

6.    The plans and specifications for the bridge are in violation of the Acts of Arkansas, Oklahoma and Congress, all of which are ''from the foot of Garrison Ave.'' Now it is planned to start the bridge 300 feet back from the foot of Garrison Avenue.

*James B. McDonough,* for appellees.

1.    The Act (104) of 1913 was legally in existence after the two years, without any vote.    5 Ohio St. 497, 524.    It was amended and revived by the Acts of 1915 in time.    61 Ark. 226; 2 Gray 84; 114 Mech. 655; 71 N. W. 941; 107 Pac. 71; 120 Pac. 555; 151 *Id.* 114; 87 S. E. 622; 2 Iowa 165; 84 Me. 58; 56 Kans. 81; 7 Martin (La.) 469; 2 La. 344.

2. Our Constitution does not prohibit the amendment of a suspended statute, nor even one repealed. 1 Ark. 279; 99 *Id*. 100.

3. The amending Act relates back to and becomes a part of the original Act. 49 N. E. 370; 64 *Id*. 862; 59 L. R. A. 190; 68 N. E. 1019; 78 *Id*. 446; 108 N. W. 772; 184 S. W. 1; 117 Ark. 606; 174 S. W. 248; 149 N. W. 137.

3. The law of 1913 was not in force until 90 days after the adjournment of the Legislature. The 1915 Act was passed in time. 179 S. W. 181.

4. The District is not without authority to construct the bridge because part of it is in Oklahoma. Acts Okl. 1915 p. 43. Appellant cannot raise this question. States have power to construct bridges. 5 Cyc. 1054; 4 A. & E. Enc. L. 922. The Act of Oklahoma is constitutional. 36 Cyc. 838. But the Legislature has power to construct a bridge partly in a sister State. 96 Ark. 410; 104 *Id*. 425; 109 *Id*. 433; 125 *Id*. 330; 5 Cyc. 1054; 114 Ark. 324; 168 S. W. 1074; 103 *Id*. 1034; 29 Conn. 356; 32 Fed. 9; 153 U. S. 525; 21 Oh. St. 14; 83 U. S. 667; 61 N. H. 433; 6 Ga. 130; 188 S. W. 822; 125 Ark. 325, etc., etc.

5. It is unnecessary to make provision in the Act for damages to property taken. The general law makes that provision.

6. The plans, etc., do not violate the Acts of Arkansas, Oklahoma or Congress. 68 N. Y. 450; 18 S. W. 391; 1 Ark. 171. See 23 So. 532; 22 N. H. 53; 70 Ill. App. 239; 24 S. W. 950; 12 S. E. 741; 64 Ark. 627; 43 So. 131; 48 S. E. 661; 78 S. W. 522. *At* means *near*.

7. It is not necessary to have the consent of the real property owners. 120 Ark. 278; 99 *Id*. 100; 97 *Id*. 322; 118 *Id*. 119. See also 99 *Id*. 100.

*H. C. Mechem, Amicus Curiae.*

The Act never became "operative" or effective. It could never be amended or revived.

McCULLOCH, C. J. Appellant, who is the owner of real property within the territory designated in a special statute as the Sebastian County Bridge District, insti-

tuted this action in the court below against the district
and the commissioners thereof to enjoin proceedings to-
word the construction of the improvement, the levying of
assessments, and issuance of bonds. The attack is upon
the validity of the statute, as well as upon the regularity
and legality of the proceedings thereunder.

The statute creating the improvement district was
enacted by the General Assembly of 1913 (Acts of 1913,
p. 380) and the purpose was to authorize the construction
and maintenance of a bridge across the Arkansas River
from the foot of Garrison Avenue in the City of  Fort
Smith to the opposite shore in Oklahoma. The whole of
Upper Township in Sebastian County, including the city
of Fort Smith, is embraced in the district. The creation
of the district was declared in the statute, the commission-
ers were named therein, and authority was granted upon
certain conditions to construct said improvement, to levy
and enforce assessments of benefit to real property, to pay
for the cost of the thing, to issue bonds and do all other
things necessary to accomplish the results provided for.
Section 5 of the statute provided, in substance, that within
thirty days after its passage the commissioners named
should organize themselves into a board by taking an oath
of office and by the selection of certain officers. Section 6,
the phraseology of which presents the principal point of
controversy in this litigation, reads as follows:

"Immediately upon the organization of said commis-
sion, or as soon thereafter as is convenient, they shall give
public notice of the passage of this Act and of their organ-
ization, and the purposes of said Act, and that the public
improvement herein contemplated is conditioned upon its
approval by a majority in value of the owners of real es-
tate within said district, or a majority of the electors vot-
ing in a special election which may be held upon this Act.
This Act may be submitted in either or both of the follow-
ing modes to determine whether it shall become operative:

"A. If, at any time within two years from the pas-
sage of this Act, a petition or petitions purporting to be
signed by a majority in value of the owners of real prop-

erty within said district is filed with said commission, the commission shall give public notice of said fact in at least one daily newspaper published in Fort Smith and set a day and place for the hearing not less than twenty days after the first publication of said notice; and, at said place and time so designated, the commissioners shall examine the petition or petitions filed, and examine the assessment of the real property within said district, and, for the purpose of said hearing, may adjourn from day to day or from time to time until said hearing is completed, at which hearing any land owner in the district may be heard and evidence may be taken in such manner as the commission may deem proper to determine the facts as to whether said petition or petitions are signed by a majority in value of the land owners in said district, as shown by the last county assessment of the lands within said district.

"If at said hearing the commissioners shall find that the petition or petitions are not signed by a majority in value of the land owners of said district, as shown by the last county assessment, they shall so declare, and such findings shall terminate proceedings under this Act, unless within the term herein limited another petition or petitions purporting to be signed by a majority in value of owners of real estate in the district is filed with the commission, when like proceedings shall again be had to determine whether a majority in value of the land owners of the district have signed such petition or petitions; provided, the finding that a majority in value has not petitioned for the improvement shall not bar the Act from becoming effective as provided in paragraph 'B' of this section.

"If said commission shall find that said petition or petitions are signed by a majority in value of the land owners of the district as shown by the last county assessment, they shall so declare and shall proceed to carry out the purposes of this Act. And in either event public notice shall be given in at least one daily newspaper published in Fort Smith of said fact, and a copy of their findings

shall be filed with the county court of the Fort Smith District of Sebastian County.

"B. The commission may call at any time within two years an election to determine whether this Act shall become operative and may call subsequent elections after the Act has failed to carry if the commission has good reason to believe that a majority of the electors then favor the Act. The election held under this section shall be held conformable as near as possible to the laws of the State governing general elections. The commissioners shall perform the duties of county election commissioners as near as applicable. All citizens of Upper Township who possess a right to vote if said election were a general election for State officers, and no others, shall be entitled to vote in said election.

"The commission shall canvass the vote cast at such special election, and, if the commission shall find a majority of the votes cast in said election were in favor of this Act becoming operative, they shall so declare and shall proceed to carry out the purposes of this Act.

"Public notice shall be given of their findings in either event in at least one daily newspaper published in Fort Smith, and copy of their findings shall be filed with the county court of the Fort Smith District of Sebastian County.

"It is the intent of this section to permit this Act to become operative if it is approved at any time within two years in either of the foregoing methods and not to become operative unless approved within said period by one or the other of the methods herein provided."

The Act was approved by the Governor on February 26th, 1913, but it did not declare the existence of an emergency, and therefore went into effect ninety days after the adjournment of the Legislature, according to the referendum clause of the Constitution. Amendment No. 10 to the Constitution of 1874. *Arkansas Tax Commission* v. *Moore,* 103 Ark. 48.

An ascertainment, by petition, of the will of the majority of the property owners, or of the will of the major-

ity of voters, by election, as provided in the statute, was not made until two years after the Act was approved by the Governor, but the General Assembly enacted another statute which was approved by the Governor March 30th, 1915 (Acts of 1915, p. 1337) containing an emergency clause, amending Sec. 6 of the original statute by substituting a copy, *in extenso,* of that section, except changing the words "two years" to "six years" so as to give the additional length of time within which to proceed thereunder. Two other sections were also amended in the same way by the new statute just referred to. An election was duly held under the statute and a majority of the voters were found to be favorable to the improvement and proceedings were under way to construct the improvement when this action was instituted.

The first question which suggests itself concerning the validity of the statute is whether or not it constituted an attempt on the part of the Legislature to delegate its constitutional authority to make the law. The answer is that the Legislature declared the law itself and merely prescribed conditions under which the powers conferred might be exercised. *Boyd* v. *Bryant,* 35 Ark. 69; *Nall* v. *Kelley,* 120 Ark. 277.

The use of the word "operative" in reference to the effect of the approval by the property owners or voters is peculiar, but it has no controlling force in determining whether the law-makers meant to delegate their authority or merely to prescribe conditions upon which the powers conferred might be executed, for a consideration of the statute as a whole shows clearly that the latter was intended, and that the law-makers meant to enact the law instead of delegating the authority to the property owners or voters. Nor was it an attempt on the part of the Legislature, in enacting the amendatory statute of 1915, to revive or amend a law, or extend the provisions thereof "by reference to title only," in violation of the Constitution (Sec. 23, Art. V) which prohibits that, and provides that "so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length." In

the first place the amendment was not "by reference to title only," but the whole of the sections amended were re-enacted and published at length. In the next place, the right to exercise the powers conferred by the statute was embraced in the amended sections which were re-enacted at length and the other portions of the statute related to the procedure, so for that reason the Act of 1915 does not offend against the Constitution. *Watkins* v. *Eureka Springs,* 49 Ark. 131; *Common School District* v. *Oak Grove Special School District,* 102 Ark. 411; *State* v. *McKinley,* 120 Ark. 165; *Harrington* v. *White,* 131 Ark. 291.

But it is contended that the original statute creating the district expired by limitation by reason of the failure to exercise the powers conferred within the prescribed time, and that for that reason the subsequent amendment constituted an abortive attempt to revive it in violation of the Constitution. The argument is that the time for exercising the power conferred began with the approval of the statute by the Governor and that it expired two years thereafter. This is, in effect, but another argument that the statute constituted an attempt to delegate legislative authority, for if the law was enacted by the Legislature it remained in force, even though the time for exercising the powers conferred expired before the amendment extending the time was enacted. The law itself was not dead, though the power conferred could no longer be exercised without further legislative action. *State* v. *Bailey,* 56 Kans. 81, 42 Pac. 373.

The interpretation of the statute to mean that the period prescribed for the exercise of the power began with the approval by the Governor—that the words "passage of this Act" referred to the time of approval, and not to the time the Act went into effect at the end of the referendum period is grounded on the decision of this court in *Jackson* v. *State,* 101 Ark. 473, where we held that the same words quoted above meant the date of approval of a statute by the Governor. A majority of this court holds that the construction in the Jackson case controls in this case, and that the period prescribed began with the ap-

proval of the statute by the Governor. The writer cannot, however, refrain from expressing his dissent from that conclusion, and he is authorized to say that Mr. Justice Humphreys shares his views on the subject. The interpretation in the Jackson case of the meaning of those words resulted from a consideration of the whole of the statute then under review in the attempt to ascertain the intention of the law-makers. *Arkansas Tax Commission* v. *Moore, supra.* In searching for the intention of the law-makers in the statute now under consideration it is readily seen that they meant to prescribe a full period of two years within which the powers conferred might be exercised, and in order to give the statute that effect it is essential that the period be held to have begun when the statute went into force at the end of the referendum period, for obviously the powers could not be exercised until then. Any other construction of the statute shortens the time within which the Legislature expressly provided that the power might be exercised, and makes the statute contradictory on its face. But, conceding that the time for exercising the power has expired, and so deciding, as the majority of the judges do, we hold that the attempt to amend the statute by the new Act of 1915 was not a violation of the Constitution.

Another contention is that the statute is void because it authorizes the construction of a bridge extending outside of this State and into the State of Oklahoma. There is no restriction on the power of the Legislature with respect to the location or extent of an improvement to be constructed through the agency of an improvement district. All that is found there is that ''the assessments on real property in districts wholly within cities and towns must be based upon the consent of the majority in value of the property owners to be affected.'' *Mullins* v. *City of Little Rock,* 131 Ark. 59. The fact that the improvement lies partly inside of the district and partly outside does not defeat the power of the Legislature to provide for its construction to be paid for by assessments on the property benefited in the district. *Mullins* v. *City of Little Rock,*

*supra; Conway* v. *Miller County Highway & Bridge District,* 125 Ark. 325. Nor is it otherwise where the improvement extends outside of the State if it results in peculiar benefits to the property in the district, and of that the legislative determination is decisive.

The facts of the present case are different from any that we have heretofore had before us in that all of the improvement to be situated inside of the district is in the city and none of it in the rural part of the district, which includes both urban and rural territory. We have decided in numerous cases that the constitutional provision concerning improvement districts in cities and towns does not apply to a district formed out of territory both urban and rural, and we can not see how that question can be affected either one way or the other by the fact that the improvement itself is situated wholly in the urban part of the district, or wholly in the rural part. The territory, both urban and rural, is treated as a whole in the formation of the district and the artificial boundaries between the two kinds of territory are entirely disregarded. The case of *Shibley* v. *Sebastian County Bridge District,* 96 Ark. 410, involved the validity of a district comprising both urban and rural property where the improvement (a bridge) was constructed entirely outside of the principal city in the district. We upheld the validity of the statute in that case, and it follows necessarily from that decision that it is unimportant as to what portion of the district the improvement is located in.

It is also contended that a certain special statute enacted by the Legislature of the State of Oklahoma authorizing the construction of this bridge is void, and that the statute of Arkansas creating the district is non-effective for that reason. We need not consider the question of the constitutionality of the Oklahoma statute inasmuch as no objection on the part of the State of Oklahoma is shown. The authority here to build the bridge is not conditioned on an additional grant of authority by the State of Oklahoma. Our statute only directs or empowers the board of commissioners to obtain from the proper author-

ities in the State of Oklahoma permission to maintain and control the bridge and to receive the contributions to go toward the payment of the cost. Unless it be shown that the construction of the improvement has been frustrated by the exercise of lawful authority in another sovereign jurisdiction, the powers conferred in our statute can not be defeated.

It is next insisted that the Act is void because it fails to provide a method for ascertaining injury to private property as a result of the construction of the bridge. The statute contains express provisions for the acquisition, by condemnation or otherwise, of a right-of-way for the bridge and its approaches, and provides for compensation to the owners of land "taken or used for the bridge or its approaches." The Constitution (Sec. 22, Art. 2), which forbids the taking or injury of private property for public use without compensation, must, of course, be read into the statute, and even if the language of the statute be interpreted as not broad enough to include compensation for damage to property, the private owners are not deprived of their rights and the statute is not invalid on that account.

The final contention relates to the proceedings under the statute, and it appears that the commissioners are about to proceed in violation of the statute by starting the bridge 300 feet back from the foot of Garrison avenue instead of starting it at the foot of Garrison avenue, as provided in the statute. The statute authorizes the construction of a bridge "across the Arkansas river at the foot of Garrison avenue," but the plans contemplate that the approach to the bridge shall commence at the next street 300 feet back from the foot of Garrison avenue. It appears that there is a sharp decline on Garrison avenue from Second street down to the foot of the avenue at First street, and the plan for beginning the bridge at Second street was devised in order to give the proper height to the structure over the river so as not to interfere with navigation. This is necessary in order to comply with the act of Congress authorizing the construction of

the bridge over a navigable stream. Appellant's property is situated on Garrison avenue between First and Second streets, and he introduced testimony tending to show that his property would be greatly injured because of the fact that the approach to the bridge beginning at Second street carries it up above the ground floor of his building, and thus impairs the use and value of the building. The manifest purpose of the statute was to provide for the bridge as a continuation of Garrison avenue, the principal highway and business street of the city of Fort Smith, and the expression "at the foot of Garrison avenue" is used relatively, not as an expression of detail as to the location of the bridge, but merely to indicate that it was to be a continuation of that street. The reasons given for starting the bridge at Second street instead of at First street, which marks precisely the end of Garrison avenue, apparently justify the adoption of that plan, and if appellant sustains injury to his property by reason of the improvement his remedy for recovery of damages is adequate.

The conclusion is reached by the majority of the court that the several attacks upon the statute and the proceedings thereunder are unfounded and that the decree of the chancellor dismissing the complaint of appellant was correct.

Affirmed.

WOOD and HART, JJ., dissent.