VAN DYKE *v*. MACK.

Opinion delivered June 30, 1919.

1. HIGHWAYS—THE MISSOURI AND ARKANSAS HIGHWAY DISTRICTS—PURPOSE OF THE ACT.—Section 1 of Act No. 82, Acts of 1919, intended to create in a single statute four separate road improvement districts in different counties with no relation to each other except an effort to attain uniformity in the route of the combined roads to be constructed under the provisions of the statute.

2. SAME—A DISTRICT INCLUDES LANDS ONLY WITHIN THE COUNTY WITHIN WHICH THAT DISTRICT IS.—A single district created under the above statute includes lands only within the county in which that district is, notwithstanding the fact that the road may run within five miles of the county line.

3. SAME—BOUNDARIES—LANDS IN ANOTHER COUNTY—BENEFITS—LEG-
ISLATIVE DETERMINATION.—The boundary of a road district was
fixed by Act 82, Acts 1919, at five miles on each side of the said
roadway, where the road ran within five miles of the boundary
between the county in which the district was situated and an
adjoining county, a legislative determination that the lands in
the first named county only were benefited by the improvement
will not render the statute invalid.

4. SAME—VALIDITY OF STATUTE CREATING CHANGE IN PORTION OF STAT-
UTE—CONTINUOUS HIGHWAY.—Act 82, Acts 1919, created four
road districts forming a continuous highway through four coun-
ties, but the act provided that the district could be created in
White, one of the four counties, only upon petition of a majority
of land owners. This part of Act 82 was thereafter repealed
and Act 128, Acts 1919, enacted, taking White County out of the
operation of Act 82. *Held* these facts did not affect the validity
of Act 82 with reference to the other three counties.

5. SAME—ANNUAL ASSESSMENTS—VALIDITY OF STATUTE.—Section 22
of Act 82, Acts 1919, as amended March 13, 1919, fixing the
maximum of annual assessments in the Missouri and Arkansas
Road District, upon rural and different grades of urban prop-
erty, *held* valid; and the statute also upheld, although no maxi-
mums were named therein for Jackson County.

6. SAME—UNIFORMITY OF ASSESSMENTS—MISSOURI AND ARKANSAS
HIGHWAY.—Each of the districts created by Act 82, Acts 1919, are
as separate and distinct as if created by different statutes,
and it is within the power of the Legislature to prescribe the
method of collecting assessments, even though different methods
are prescribed in the different districts.

7. SAME—SELECTION OF ROUTE—ROUTE PREVIOUSLY SELECTED BY AN-
OTHER DISTRICT.—The organization of a road district in Jackson
County under Act 82, Acts 1919, is not rendered invalid because
the commissioners, in selecting the route, selected as a portion
thereof the route already selected by another district organized
under the general road statutes.

8. SAME—BRIDGE ACROSS WHITE RIVER IN JACKSON COUNTY.—Act
82, Acts 1919, creating the Missouri and Arkansas Road District,
and which authorizes the commissioners of the several districts
to construct bridges, etc., and all necessary appurtenances of
said roads, does not authorize the commissioners to construct a
bridge across White River in Jackson County, as a part of the
road to be improved.

Appeal from Jackson Chancery Court; *Lyman F.
Reeder,* Chancellor; reversed.

*George A. Hillhouse* and *Rose, Hemingway, Cantrell & Loughborough,* for appellants.

1. The act (No. 82, Acts 1919) is not void and invalid, because (1) it includes lands in Independence County, and no provision is made for the taxation thereof. It was not the intention of the Legislature to embrace any lands outside of Jackson County and the five-mile limit should be construed as meaning all the lands in Jackson County within that distance. The court should be guided by the principles decided in 133 Ark. 64.

2. If, however, lands in Independence County are included, the act is valid and provides adequate machinery for its enforcement. The proceedings are not judicial but ministerial merely or administrative and the tax can be levied by any persons or tribunal selected by the Legislature. 111 Ark. 150; 96 *Id.* 410; 104 *Id.* 425. It is plain that the county court of Jackson County can be invested with the power to levy taxes throughout the whole district. It is not necessary to provide the details for certifying the levy to the clerk of Independence County and other matters of mere machinery to effect the purpose. Ordinary intelligence is presumed and assumed on the part of administrative officers where such is manifestly the purpose of the Legislature. 86 Ark. 231. The tax is to be levied in Jackson County upon all lands of the district and there is no defect in the act. Section 8 provides that the tax is to be levied by the county court of the proper county where the lands are situate.

3. There is no interference with other districts. The demurrer admits the allegations of the answer which disclaims any interference or intention to interfere.

4. The limitation on the assessment does not render the act void as held by the court below. 21 Ark. 40. If the Legislature can provide a *minimum* for the assessment it can provide a maximum if necessary. Section 25 is valid. It is the duty of the commissioners of the Jackson County district to proceed with the improvement whether the White County district makes its improvement or not. 120 Ark. 277; 133 *Id.* 380.

ARK.]                    VAN DYKE v. MACK                    527

Independence County acted without authority, and said act is void and unconstitutional in so far as it applies to any land in Independence County. 133 Ark. 66.

*Gustave Jones, amicus curiae.*

The act is unconstitutional and void for many reasons. 114 Ark. 324. A bridge would have to be built across White River—a tremendous expense. As the taxes levied in one county cannot be expended in another, the enormous burden of the bridge would be borne by Jackson County lands alone. 52 Ark. 107; 125 *Id.* 325; 133 *Id.* 380. Jackson County is not protected by the act from unjust, unequal and unconstitutional exactions in the act. See also Act No. 128, Acts 1919.

*C. M. Erwin,* for appellee.

Section 1, Act No. 82, Acts 1919, organized and established a separate district for each of the four counties and intended to embrace lands only in each county within five miles of the road. See Act No. 266, Acts 1919, section 22. If the proposed highway will be of benefit to lands on either side of the road from the city of Little Rock to the Jackson County line, an imaginary line dividing the counties of Jackson and Independence would not keep the lands from receiving a benefit and exempt therein from paying their just proportion for the improvement.

*S. M. Bone* and *John B. & J. J. McCaleb, amici curiae.*

The act is not void for the reasons stated by the court below nor by appellants' counsel. Independence County is not mentioned in the act, and method of assessing lands in that county is set out, and no commissioners named therefor, and it clearly was not the intention of the Legislature to embrace lands in that county.

McCULLOCH, C. J. This case involves an attack on the validity of act No. 82 of the General Assembly of 1919, which was approved February 14, 1919. Section 1 of the statute, which declares its pupose, reads as follows:

"The purpose of this act is to secure the construction of a highway running from the city of North Little Rock, Arkansas, through the counties of Pulaski, Lonoke, White, Jackson, and connection with the Alicia and Walnut Ridge Highway on the Lawrence County line at or near Alicia, thereby giving a through route to the Missouri line, over the Alicia and Walnut Ridge Highway to Walnut Ridge, thence over highway of Road Improvement District Number Two of Lawrence County to Randolph County line, thence over highway of Road Improvement District Number Three of Randolph County to Pocahontas, thence over highway of Pocahontas and Donathan to Missouri. To that end, there are hereby organized four improvement districts: One for Pulaski County, one for Lonoke County, one for White County and one for Jackson County. Said districts shall be entitled respectively, the Arkansas and Missouri Highway District in Pulaski County, the Arkansas and Missouri Highway District in Lonoke County, the Arkansas and Missouri Highway District in White County and the Arkansas and Missouri Highway District in Jackson County. Each of said districts shall be corporate bodies, with the right to sue and be sued, to have a corporate seal and to perform all the functions granted to them by this act. The limits of each district shall embrace all quarter sections of land, any portion of which is within five miles of the route as selected by the commissioners, whether the same be laid off in town or city lots or not."

Other sections name the commissioners for each of the districts and provide for the construction of the improvement, the issuance of bonds and the assessment of benefits. The other provisions of the statute involved in the attack made in this case on its validity will be referred to later in the discussion.

It appears from the section copied above that the lawmakers intended in this single statute to create four separate road improvement districts in different counties with no relation to each other except an effort to attain uniformity in the route of the combined roads to be con-

structed under the provisions of the statute. Section 4 authorizes the commissioners of the respective districts, in connection with the State Highway Department to "proceed to select a highway across their respective counties and joining with the highway selected by the commissioners of the adjacent counties," but that if "the commissioners of any two districts are unable to agree upon a meeting point of the respective highways, the State Highway Engineer shall fix the meeting point." That section further provides that when the route may be selected the county court shall proceed to lay out the public roads pursuant to the general statutes on that subject.

Appellee owns lands in Jackson County within the limits of the district as laid out, and he instituted this action in the chancery court of Jackson County to restrain the commissioners of the Jackson County district from proceeding under the terms of the act to assess benefits and levy taxes thereon. Some of the attacks relate to the validity of the whole statute, and others are directed to the question of the validity of only that part of the statute which creates the Jackson County District.

(1) The first point involved relates to the question of inclusion or exclusion of lands in Independence County. The Jackson County route as selected by the commissioners runs for a considerable distance within five miles of the Independence County line, and it is insisted that the statute is invalid because it either includes Independence County lands lying within the five-mile limit without providing for a method of assessment, or excludes those lands, notwithstanding the fact that the statute itself constitutes a legislative determination that all lands within the five-mile limit will be benefited by the improvement.

(2) We interpret the language of the statute to mean that only Jackson County lands within the five-mile limit are embraced within the boundaries of the district. There is some ambiguity in the language of the several provisions of section 1 when read separately, but, when

read together and in connection with the statute as a whole, it is apparent that the lawmakers intended to create four separate districts, the boundaries of which were to be within the four separate counties mentioned, and that the concluding words of the section specifying the limits of the districts relate only to lands in the county, notwithstanding the fact that the route may run near enough to the boundary of an adjoining county to include lands of that county within the five-mile limit. The name by which the separate districts are indicated in the statute shows clearly the intention of the lawmakers. The districts are designated respectively, the "Arkansas and Missouri Highway District in Pulaski County, the Arkansas and Missouri Highway District in Lonoke County, the Arkansas and Missouri Highway District in White County and the Arkansas and Missouri Highway District in Jackson County." The fact, too, that the various sections relating to the organization of the district, the supervision of the respective county courts and the appointment of assessors all indicate that the districts are created by counties, and are confined to the limits of the counties mentioned.

(3) The other point of attack that the statute is void because it excludes the Independence County lands is answered by saying that the statute only constitutes a legislative determination of benefits to the lands embraced in the districts and not all land within five miles of the route. It may have been determined by the lawmakers that lands in adjoining counties where perhaps the trend of travel is in a different direction may not receive benefits, even though within five miles of the road, or that the benefits received may be relatively so slight as not to justify inclusion within the boundaries of the district. We cannot say, in other words, that the legislative determination that the lands in Independence County will not be benefited is on its face arbitrary and without foundation. On this point the case is ruled by the decision of this court in *Conway* v. *Miller County Highway & Bridge District,* 125 Ark. 325, which involved the validity of a

statute authorizing the construction of a bridge across a navigable stream which formed the boundary between two counties, and it was held that the failure to include lands in one of the counties would not render the statute invalid. The same conclusion was reached in other cases. *Mullins* v. *Little Rock,* 131 Ark. 59; *Fenolio* v. *Sebastian Bridge District,* 133 Ark. 380.

(4) The chancery court decided that the statute was void for the reason that the construction of the road in White County through the agency of a district in that county was dependent upon the petition of a majority of the property owners in that county and might not be constructed at all, thus thwarting the purpose of the lawmakers in providing for the creation of four districts for the construction of continuous roads. Section 27 of the statute provides, in substance, that, after the adoption of plans for the construction of the improvement in White County, further progress shall be suspended until a majority of the owners of property within the district in that county shall petition the county court for the ratification or adoption of the statute, and when a majority so petitions the county court an order shall be entered directing the commissioners to proceed with the construction of the road. The General Assembly of 1919 subsequently passed Act No. 128, which was approved February 26, 1919, taking the White County district out of the operation of Act No. 82, or rather abolishing the district created by Act No. 82 in White County and authorizing the construction of the highway in that county pursuant to the terms of Act No. 213 of the session of 1917. The validity of the last mentioned statute is not involved in the present litigation further than it may be found to affect the validity of Act No. 82 relating to the creation of the districts in the other counties mentioned.

We are of the opinon, however, that neither section 27 of Act No. 82, or Act No. 128 abolishing White County District created by Act No. 82, renders the former statute invalid so far as it creates the districts for the improvement of the roads in the other three counties. The

effect of act No. 82 as originally enacted was, as before stated, to provide for the construction of a road along a continuous route, but the lawmakers saw fit to express in section 27 the condition that the construction of the road in only one of the counties should be dependent upon the will of a majority of the land owners. An intention is clear that the force and validity of the statute with respect to the construction of the roads in the other counties should not depend upon the construction of the road in White County. There is a clearly expressed legislative purpose to build each of the roads, and a condition is attached to the construction of only one of them, which does not affect either one way or the other the force of the other parts of the statute creating the districts in Jackson, Lonoke and Pulaski counties. The new statute (act No. 128) does not affect the validity or force of any part of the old statute, except that part which relates to White County. It leaves the remainder of the statute in force.

The chancellor also decided that the statute was void because the limitation upon the assessment of benefits contained in section 22 "is unjust and inequitable, and not equal and uniform, as required by the Constitution of the State." Section 22, as amended by the subsequently enacted statute approved March 13, 1919, reads as follows:

"The total assessed benefits shall not be collected in less than twenty years and one-twentieth of said assessed benefits shall not exceed an average of ten cents per acre per annum on the rural property nor an average of thirty cents per annum per lot of the dimensions of 50x140 feet on the property in cities of the first class and proportionately for larger or smaller lots or tracts of land, and an average of one-half that amount on lots or tracts of land in incorporated towns or cities of the second class. Provided this section shall not apply to any lands or cities located in the district known as 'Arkansas-Missouri Highway District in Jackson County.'"

(5-6)  It will be observed that this section, by its express terms, is made inapplicable to the district in Jackson County.  We fail to discover in this part of the statute any grounds for declaring act No. 82 invalid, even as applied to Jackson County or any of the other counties.  The section quoted merely fixes the maximum of annual assessments and constitutes a legislative determination of the uniformity of this maximum in fixing the annual assessments on rural land at ten cents per acre and the assessments on city property at thirty cents on each lot of certain dimensions and half that amount on other urban property.  This classification does not appear to be obviously erroneous, and the will of the lawmakers ought not to be disturbed.  Nor does the method of collecting assessments lack uniformity because there is no maximum prescribed as to property in Jackson County.  Of course, under the law the assessments must be limited to the benefits derived from the improvement and must be uniform, but the limitation prescribed in this section of the statute relates only to the maximum annual levy of taxation, and it did not violate any rule of uniformity by failing to apply to one of the counties embraced in the statute.  Each of the districts created are just as separate and distinct as if they were created by different statutes, and it was within the power of the Legislature to prescribe the method of collecting assessments, even though different methods are prescribed in the different districts.

(7)  The next point urged against the validity of the statute is in respect to its operation in connection with another road district in Jackson County which has adopted the same route.  The statute itself makes no reference to the other road district, but it is alleged in the complaint that a road improvement district has been organized under general statutes for the purpose of building a road from Newport to Tuckerman, that the district has sold its bonds and is actively engaged in the construction of the road, which is laid out along the route adopted by the commissioners of the Arkansas and

Missouri Highway District in Jackson County, and that this fact constitutes a frustration of the design of the Legislature in creating the last mentioned district. In the answer of the commissioners they admit that Road Improvement District No. 2 of Jackson County organized under general statute is constructing a road from Newport to Tuckerman along the route selected by the commissioners, but that the plans formed by these commissioners do not provide for the construction of a road along that route and that their plans do not interfere with the construction of that part of the road by Road Improvement District No. 2 of Jackson County. It will be seen from inspection of any map of the State that the road between Newport and Tuckerman constitutes a section of the route in Jackson County which ends at Alicia on the Lawrence County line. The exclusion of that section from the operation of the present statute will constitute a gap in the road to be constructed through the agency created in Act No. 82.

We do not stop to consider what effect, if any, the enactment of this statute has upon the creation under the general statutes of Road Improvement District No. 2 of Jackson County, but we are called upon merely to consider the effect of the action of the commissioners of the Arkansas and Missouri Highway District in Jackson County in selecting a route through that county along which a road is being constructed by another public agency. It will be observed that section 1 of act No. 82 authorizes the commissioners of the district in each county to select the route, and that it declares that all lands situated within five miles of the route as selected shall be embraced within the district. Note in this connection that the boundaries run from the route selected, not necessarily the road actually constructed. The commissioners have selected the route along which the road from Newport to Tuckerman is proposed to be constructed through another agency, but the route remains as selected, and the boundaries embrace all lands within five miles of the route selected. The fact that the plans

adopted by the commissioners do not contemplate a construction of the road along part of the route does not affect the boundaries of the district. It may affect very materially the question of the assessment of benefits, but that is a matter with which we are not concerned in determining the validity of the statute.

We do not know judicially the extent to which the lands within the five-mile limit along the route between Newport and Tuckerman may be affected beneficially by the construction of the other portions of the road in addition to that portion of it which is to be constructed through another agency. Nor do we know judicially the boundaries of Road Improvement District No. 2. There may be such a thing legally as the overlapping of the boundaries of separate improvement districts if substantial benefits are derived from each district. *Cumnock* v. *Alexander, ante* p. 153. Those matters are taken into consideration merely in ascertaining benefits, and, as before stated, do not affect the validity of the creation of the district unless the fixing of boundaries of different districts is shown to be arbitrary and demonstrably erroneous.

(8) The last point of attack made in this case is that section 4 of the statute authorizes the commissioners of the several districts "to construct bridges, subways, culverts and all necessary appurtenances of said roads," and that the construction of a bridge across White River in Jackson County would operate as an unjust and unequal burden on tax payers on lands in that county. The answer to that contention is, we think, that the language of the statutes does not authorize the commissioners to construct a bridge across White River as a part of the road to be improved. That would constitute a separate and distinct improvement which is not embraced within the terms of the statute. The language quoted above was manifestly intended to refer to such bridges, subways, and culverts as would constitute necessary appurtenances to the road to be constructed, and not bridges of such size and magnitude as would constitute separate improve-

ments.   Section 5, which is the one that relates to the method of assessing benefits, refers only to the assessment of benefits "which will accrue by reason of the construction of the highway in their respective counties," and makes no mention of the construction of bridges, which shows that the Legislature did not intend to authorize the construction of bridges which would constitute separate improvements, but merely bridges and culverts which would be essential portions of the road and constitute a part of the particular improvement and not a separate one.

These are the only points of attack made in the pleadings and briefs of counsel, and we do not enter upon consideration of any other phases of the statute.   The conclusion reached is that the attack is not well founded, and that the chancery court was in error in declaring the statute to be void.

The decree is reversed, and the cause is remanded for further proceedings not inconsistent with, this opinion.

HART and SMITH, JJ., dissent.