## ARKANSAS TAX COMMISSION *v.* MOORE.

### Opinion delivered March 11, 1912.

1. CONSTITUTIONAL LAW—WHEN PROVISION OF CONSTITUTION SELF-EXECUTING.—A constitutional provision is self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected or the duties imposed may be enforced. (Page 51.)

2. SAME—INITIATIVE AND REFERENDUM AMENDMENT.—Amendment No. 10 to the Constitution, known as the Initiative and Referendum Amendment, is self-executing. (Page 52.)

3. STATUTES—WHEN OPERATIVE.—All legislative enactments except those necessary for the immediate preservation of the public peace, health or safety, are subject to the operation of the initiative and referendum amendment, and do not go into effect till the expiration of ninety days after final adjournment of the Legislature, nor then until approved by the people if the referendum is ordered or invoked. (Page 53.)

4. SAME—INITIATIVE AND REFERENDUM AMENDMENT—EXCEPTIONS.— It is within the legislative discretion to determine when statutes are necessary for the immediate preservation of the public peace, health or safety. (Page 54.)

5. SAME—TIME OF TAKING EFFECT.—The fact that an act expressly provides that certain things shall be done before expiration of ninety days from final adjournment of the legislative session at which it was passed, and concludes: "This act shall take effect and be in force from and after its passage," is not sufficient to establish a legislative determination that the act is necessary for the immediate preservation of the public peace, health or safety. (Page 57.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

STATEMENT BY THE COURT.

The Tax Commission, relying upon the authority given it by Act No. 1 of the extraordinary session of the General Assembly of 1911, entitled, "An act to reduce the rate of taxation, and to revise and amend the revenue laws of Arkansas" (the Turner-Jacobson Act), brought this suit against the assessor of Pulaski County, to enforce the provisions of the law and to require him to comply therewith.

The Attorney General appeared, and asked leave to be made a party, and moved the court to dismiss the suit, challenging the validity of the act of the Legislature, which motion was sustained, and from the judgment the Tax Commission appealed. Said act was approved June 29, 1911, and in section 127 provides: "In the year 1911 all property in the State shall be listed for assessment and valued as on the first Monday in June of said year; the several assessors shall assess the property in their respective counties between the first Monday in June and the 1st day of September; the several boards of supervisors of assessments shall meet as boards of equalization the 1st day of September, and may continue in session until October," etc. Section 28, clause 5, provides that "in the year 1911 the corporations whose assessments is provided for in this section shall make the return herein prescribed and file the same with the Arkansas Tax Commission on or before the 1st day of July of said year." And section 29 requires: "The assessors shall enter upon their books the assessments so certified in the same manner as they enter assessments of railroads, etc." By section 64 it is provided: "The board of supervisors of assessments shall meet on the 1st day of July of each year," etc. Section 128, after enumerating the laws repealed, concludes: "And this act shall take effect and be in force from and after its passage."

*Mehaffy, Reid & Mehaffy,* for appellant.

The act was operative and in effect. It falls within the exception of Amendment No. 10. The amendment does not apply to "laws necessary for the immediate preservation of the public peace, health or safety," and as to such laws the action

of the legislative department is final and conclusive. 74 Pac. 720; 79 *Id.* 720; 24 Kan. 700, 706, 721; 66 Ark. 575; 48 *Id.* 513; 61 *Id.* 21; 35 *Id.* 73; 59 *Id.* 513; 70 *Id.* 557; 69 *Id.* 376; Endlich on Int. of Stat. §§ 44, 47, 48; Suth. on Stat. Const. § 238. The case of 31 Ark. 701, has not been overlooked.

*Hal L. Norwood*, Attorney General, and *Wm. H. Rector*, Assistant, for appellee.

1. The Referendum Amendment is self-executing. 91 Pac. 577; 95 *Id.* 435.

2. The act was not effective until ninety days after the adjournment of the Legislature unless the emergency clause is attached. 88 Pac. 522; 83 Ark. 448.

3. As to the meaning of the words "after its passage," etc. See 53 Fla. 647; 90 N. E. 754; 70 S. W. 945; 100 *Id.* 1042.

4. The act and its legislative history show there was no intention to make it immediately effective. Suth. on Stat. Const., § 52; 90 Ark. 174; 83 *Id.* 448; 72 *Id.* 565; 36 Cyc. 1138; 32 Ark. 414, 515; 34 *Id.* 263; 94 U. S. 268; 16 Ill. 361; 14 Ohio 472; 16 Wall. 499; 40 Ark. 212.

KIRBY, J., (after stating the facts). The Attorney General contends that said act of the Legislature was not effective and in force at the bringing of the suit, because of the provisions of Amendment No. 10 to the Constitution, known as the Initiative and Referendum Amendment, thus making it necessary to determine the effect of said amendment.

It provides: "The legislative powers of this State shall be vested in a General Assembly which shall consist of the Senate and House of Representatives, but the people of each municipality, each county and of the State, reserve to themselves power to propose laws and amendments to the Constitution and to enact or reject the same at the polls as independent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly. The first power reserved by the people is the initiative, and not more than 8 per cent. of the legal voters shall be required to propose any measure by such petition, and every such petition shall include the full text of the

measure so proposed. Initiative petitions shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon.

"The second power is a referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health or safety) either by the petition signed by 5 per cent. of the legal voters, or by the legislative assembly, as other bills are enacted. Referendum petitions shall be filed with the Secretary of State not more than ninety days after the final adjournment of the session of the legislative assembly which passed the bill on which the referendum is demanded. The veto power of the Governor shall not extend to measures referred to the people. All elections on measures referred to the people of the State shall be had at the biennial regular general elections, except when the legislative assembly shall order a special election. Any measure referred to the people shall take effect and become a law when it is approved by a majority of the votes cast thereon, and not otherwise. * * * Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State, and in submitting the same to the people he and all other officers shall be guided by the general laws and the acts submitting this amendment until legislation shall be specially provided therefor."

It is necessary to determine first, the suit having been brought before the expiration of the ninety days after the adjournment of the session of the Legislature which passed the act, whether this amendment to the Constitution is self-executing. A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected or the duties imposed may be enforced," is the general rule given in Cooley's Constitutional Limitations, and approved by our court. *Jones* v. *Jarman,* 34 Ark. 323; *Griffin* v. *Rhoton,* 85 Ark. 95.

"The question in every case is whether the language of a constitutional provision is addressed to the courts or the Legislature—does it indicate that it was intended as a present enactment, complete in itself as definitive legislation, or does it contemplate subsequent legislation to carry it into effect? This is to be determined from a consideration both of the

language used and the intrinsic nature of the provision itself. If the nature and extent of the right conferred and of the liability imposed are fixed by the provision itself, so that they can be determined by the examination and construction of its own terms, and there is no language used indicating that the subject is referred to the Legislature for action, then the provision should be construed as self-executing," and its language as addressed to the courts. *Willis* v. *Mabon*, 48 Minn. 140, 50 N. W. 1910, 16 L. R. A. 281.

Heretofore the people, the primary source of power in our government, intrusted all their power for making laws to the legislative department of government, with constitutional restrictions and limitations, and now by this amendment they have reserved to themselves power to pass directly upon all acts of their Legislature, except laws necessary for the immediate preservation of the public peace, health or safety, and approve or reject the same. The people regarded it necessary to reserve such power, and, knowing they would be impotent to compel their Legislature to make provision to carry into effect their will, upon a mandatory expression thereof even, they plainly reserved the right, independently of legislative sanction, and directed in clear, concise and unequivocal terms, the manner of submitting to the people the matters initiated and referred, and that in submitting them the Secretary of State and all other officers "shall be guided by the general laws and the acts submitting this amendment until legislation shall be specially provided for." Without any action by the Legislature, laws could be initiated or referred in accordance with the terms of this constitutional amendment, and we hold that it was clearly intended to be and is self-executing. We are confirmed in this view by a well-considered opinion of the Supreme Court of Oregon, holding a like provision of the Constitution of that State, from which ours was borrowed, self-executing. *Stevens* v. *Benson*, 91 Pac. (Ore.) 577.

It may be desirable, however, for the better protection of the right secured, to provide a more specific and definite system for giving full effect to these provisions of the Constitution, and it was the purpose of the people, its makers, that it should be done if needed, and so expressed in saying that the officers in carrying it into effect shall be guided by the general

laws, etc., "until legislation shall be specially provided therefor;" but, as Judge Cooley says, "All such legislation must be subordinate to the constitutional provision and in furtherance of its purpose, and must not in any particular attempt to narrow or embarrass it.". Constitutional Limitations, 122.

Thus the people retained this right with power to enforce it, without regard to the disposition of their Legislature, leaving to it the power to make all further laws thought desirable to facilitate the exercise of the right in its full enjoyment.

Under this initiative and referendum amendment only "laws necessary for the immediate preservation of the public peace, health or safety" are excepted from its provisions, and no power is reserved by the people to pass directly upon such laws.    All other laws are subject to its operation, and ninety days being given by its terms from the final adjournment of the session of the Legislature which passed them in which to demand or order the referendum thereon, they can not take effect or go into operation till the expiration of ninety days after such adjournment nor thereafter until approved by the people, if the referendum is ordered or invoked.

It was not intended that an act passed by the Legislature should take effect conditionally and subject to the referendum, and continue in force from its passage if the referendum was not ordered, or that an act once in force should be suspended by the referendum till its approval by the people.

"That which purports to be a law of a State is a law or it is not a law, according as the proof of the fact may be, and not according to the shifting circumstances of the parties.    It would be an intolerable state of affairs if a document purporting to be an act of the Legislature could thus be a law in one case and for one party, and not a law in another case and for another party; a law today and not a law tomorrow; a law in one place and not a law in another in the same State.    And whether it be a law or not a law is a judicial question to be settled and determined by the courts and judges." *South Ottawa* v. *Perkins,* 94 U. S. 260; *Wilkes County* v. *Coler,* 180 U. S. 506; *Rogers* v. *State,* 72 Ark. 565.

This brings us to the question and makes it necessary to ascertain whether the act under consideration comes within the exception or belongs to the general class of laws within

the amendment. The constitutional provision is also a chart for legislative guidance, and leaves it in the power of the Legislature, in its discretion, to determine what laws come within the exception as necessary for the immediate preservation of the public peace, health or safety, for as to all such its power is not restricted. It was a question exclusively for legislative determination, and such determination alone could bring it within this exception and power of the Legislature to make it immediately effective, and thereby remove it from the general class of laws upon which the people reserved the right to order the referendum. *Stevens* v. *Benson, supra; Kadderly* v. *Portland,* 74 Pac. (Ore.) 720; *Sears* v. *Multnomah County,* 88 Pac. (Ore.) 522.

It is insisted that, since the act by its terms expressly provides that certain things shall be done in the year 1911 upon dates and at times occurring before the expiration of ninety days from the final adjournment of the session of the Legislature at which the bill was passed, and concludes: "This act shall take effect and be in force from and after its passage," the Legislature thereby determined it belonged to said excepted class, and that it should become immediately effective.

It is the business of the court to ascertain the legislative intent and determine when the act became operative as a law. If the Legislature had used the words of the exception in the amendment and said that the act was necessary for the immediate preservation of the public peace, health or safety, and should go into effect from and after its passage, there could have been no question as to the time of its becoming operative, or if it had used any other words of similar import unmistakably showing such an intention, no doubt would have arisen; but it failed to do so, making necessary construction by the court.

In *State* v. *Little Rock, M. R. & T. Ry. Co.,* 31 Ark. 701, the question for decision was the validity of State aid railroad bonds issued under authority of an act of the Legislature which the court construed in connection with sec. 22, art. 5, of the Constitution of 1868, which provided: "No public act shall take effect or be in force until ninety days from the expiration of the session at which the same is passed, unless it is otherwise provided in the act." The act of the Legislature,

approved July 21, 1868, submitted to the people for their consent at the ballot box at the next general election the question whether the State should lend its credit for building railroads, and made no provision in the act declaring the time when it should take effect. The session then adjourned on July 23 until the 17th of November that year, and met on that date and continued in session until the 10th of April, 1869, when the Legislature finally adjourned. The court, construing the act, held that it did not become effective until ninety days after the final adjournment of the session at which it was passed, and that a general election, held at a time designated in the act occurring before the expiration of said ninety days after the adjournment of the session, was without authority of law and void, saying:

"We are unable to conceive how a legislative enactment, which, of necessity, must be complete, can be made to take effect for one purpose and not for another. * * * And unless by an express declaration in the act itself as to the time when it is to take effect, under an express provision of the Constitution, it does not go into effect, and is inoperative as a law, until ninety days after the adjournment of the session at which the law was passed."

It is also quoted with approval from *Wheeler* v. *Chubbuck*, 16 Ill. 361, where the question for decision was the time a law became effective under a somewhat similar constitutional provision, the following:

"But such direction must be made in clear, distinct and unequivocal provisions, and can not be helped out by any sort of intendment or implication. * * * In order to take an act out of the constitutional provision, the Legislature must direct that the act as a whole and entirety shall take effect at a different time. It is not sufficient that certain parts of it might have a construction which would, taken separately, give these parts effect at an earlier period."

The fact that by the terms of the statute something is to be done under it before the expiration of the constitutional period for it to take effect does not amount to a legislative direction that the act shall take effect at that time or sooner than the time fixed in the Constitution. Cooley's Constitutional Limitations, p. 224.

Before the adoption of this amendment laws became effective upon approval by the Governor or upon passage over his objections, or if not returned by him within five days after presentation to him for signature, or in case of adjournment within twenty days thereafter, unless vetoed and a proclamation issued giving reason therefor. Sec. 15, art. 6, Constitution 1874. *Powell* v. *Hays*, 83 Ark. 448. The provision that a law shall take effect from and after its passage, in general use by the Legislature in making laws before the adoption of this amendment to the Constitution, was unnecessary, and meant no more than that such a law should be operative from the time when the formalities of enactment were actually completed and it could become effective under the Constitution. Such words or terms have been given a like meaning by the courts of other jurisdictions, and been held to have reference to the time the statute takes effect. *Mills* v. *State Board*, 3 Amer. & Eng. Ann. Cases 736, and cases cited in note.

In *Jackson* v. *State*, 101 Ark. 473, the court held, construing a law passed at the regular session providing it should go into effect "ninety days from and after its passage," that the words, "after its passage" as used meant approved by the Governor, the completion of its enactment, and that the act was passed when approved but did not become effective, because of the manifest intention that it should not do so. The court there, in ascertaining the legislative intent, concluded that it was meant to postpone the operation of the statute for a period of ninety days after its approval by the Governor (or, in the event of his disapproval, after its passage over his veto), without regard to the reference period or whether or not the referendum provision was in force. That construction of the statute which we then had under consideration had little, if any, bearing on the question now presented. We do not find the construction adopted in that case to be in conflict with the views now expressed.

In *Sears* v. *Multnomah County*, 88 Pac. 522, the court construed a like provision of the Constitution of Oregon in connection with a former one providing that laws should become immediately effective upon an emergency declared therein by the Legislature, and held that a law in which an emergency was sufficiently declared to become effective under

the old provision of the Constitution would not become effective after the adoption of the amendment containing a like exception as our own, and that the exception in the amendment should be read into the former provision of the Constitution, saying:

"We believe the amendment makes its own exceptions. If this conflict with sec. 28 of art. 4, that will constitute a limitation upon it to that extent. Therefore we conclude that if an act comes within the amendment of sec. 1, art. 4, of the Constitution, and the Legislature desires to have it take effect upon its approval, it must so declare and set it forth in the preamble or body of the act; and as the emergency clause contained in this act does not pretend to bring it within the exception of the amendment to sec. 1 of art. 4, it can not operate to give it immediate effect, and therefore it became effective ninety days from the approval thereof by the Governor."

The provisions of the amendment must be liberally construed to effectuate the purpose of the sovereign people, who by its terms expressly reserved the right to order the referendum upon all laws passed by the Legislature except such as the Legislature itself should determine and in so doing declare were necessary for the immediate preservation of the public peace, health or safety.

The concluding provision of the revenue act and the others fixing dates for the performance of certain things before the act could become operative under the constitutional amendment unless it comes within the exception do not manifest an intention upon the part of the Legislature to put it into effect as a law necessary for the immediate preservation of the public peace, health or safety, and were not meant for, and are not, a legislative determination that the act should take effect as such, and it could not therefore take effect until ninety days after the final adjournment of the session of the Legislature at which it was passed or after its approval by the people if the referendum is invoked. Consequently, it was not the law when this suit was brought nor authority for this procedure by the Tax Commission, and the judgment of the lower court dismissing the complaint was right, and it is affirmed.