## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* RODDY.

### Opinion delivered November 10, 1913.

1.  RAILROADS—DUTY OF TRAVELER AT CROSSING TO LOOK AND LISTEN—FAILURE OF RAILROAD TO GIVE SIGNALS.—Where there is nothing to excuse a traveler approaching a railroad crossing from the absolute duty of looking and listening, the failure of the railroad to give signals can not be considered upon the question of contributory negligence.  (Page 166.)

2.  RAILROADS—INJURY TO TRAVELER—DUTY TO LOOK AND LISTEN.—A traveler at a railroad crossing is not excused from the duty of looking in both directions, when it appears to him that danger lies in one direction only.  (Page 167.)

3.  RAILROADS—INJURY TO TRAVELER AT CROSSING—CONTRIBUTORY NEGLIGENCE.—Where a traveler at a public crossing was guilty of con-

tributory negligence in failing to look and listen, the railroad company is not rendered liable by reason of its failure to ring the bell or blow the whistle. (Page 167.)

4. RAILROADS—LOOKOUT STATUTE.—Act No. 284, page 275, of the Acts of 1911, being the amended lookout statute, did not contain the emergency clause, and did not go into effect until ninety days after June 2, 1911. (Page 168.)

5. RAILROADS—INJURY TO TRAVELER AT CROSSING—OBSTRUCTION OF CROSSING.—Where the obstructing of a public crossing by a railroad train for more than ten minutes was not the proximate cause of an injury to deceased, it is error to charge the jury that defendant was guilty of negligence if it obstructed the crossing. (Page 169.)

Appeal from Hot Spring Circuit Court; *W. H. Evans*, Judge; reversed.

### STATEMENT BY THE COURT.

Appellee instituted this suit as administratrix of W. R. Roddy, her deceased husband, and in her complaint she alleged that her intestate was killed on the 29th day of May, 1911, by the negligent operation of one of appellant's trains at Portland, in this State. The negligence was alleged to have consisted in a failure to keep a lookout, and a failure to give signals at a public street crossing. The answer denied that appellant had been guilty of any negligence in the operation of its train by failure to keep a lookout, but says the injury could not have been avoided by any kind of lookout that might have been kept, and denies that there was any failure to give proper statutory signals for the crossing at which deceased was killed. It was further alleged that deceased's death was due to his contributory negligence in attempting to cross in front of a rapidly approaching train, and that by the exercise of ordinary care, he could have seen the train and have avoided his injury and death, and that he could have crossed said track after he went upon it had he hurried across, and that he placed himself in a position where defendant's trainmen could not discover his peril, by keeping a lookout in time to avoid striking him.

The evidence discloses that the railroad runs north and south through the town of Portland, a town of a

thousand or more people, and that the crossing where the injury occurred is in the southern part of the town, and one much used, and runs east and west over three tracks which are only four feet eight inches from rail to rail, and seven feet from rail to rail across the space between the tracks. Just to the left of the crossing is a cotton seed house and in front of it, on the house or first track, were several box cars close up to the crossing. On the middle, or the passing track, was a freight train headed south at the time of the injury, and, although there is some conflict as to its exact location with reference to the crossing, there was evidence to support a finding that it was standing out over the crossing to a considerable extent. The evidence would also sustain a finding that the freight engine was popping off steam, but we think the evidence does not show that there was such escape of steam as would have enveloped the deceased and prevented him from seeing and from being seen, in fact, a number of witnesses saw the deceased from various angles, and the vision of none was interfered with by the escaping steam. But the train which struck the deceased was approaching from the south, and there is nothing in the evidence to show that escaping steam from the freight engine headed south would have interfered with the view of a train approaching from the south. Deceased came upon the track from the east, and his view to the south was obstructed by the standing box cars until he had crossed over the first or house track, after which there was nothing to prevent him from seeing the passenger train approaching from the south, on the third or main line track, for the tracks in that direction were straight for three or four miles. In the absence of any signals on the part of the approaching train, the jury might well have found that deceased did not hear that train because of the noise made by the escape of steam on the freight engine, but only a failure to look at any time to the south could explain deceased's failure to see the train which killed him. The evidence

is conflicting as to whether the passenger engine gave proper signals for the crossing.

A number of instructions were given at the request of both appellant and appellee, and such of them will be set out in the opinion, as it is necessary to discuss.

*E. B. Kinsworthy, H. S. Powell* and *T. D. Crawford,* for appellant.

1. Where the undisputed evidence shows that the injured person was guilty of contributory negligence in failing, at a public crossing, to look and listen for approaching trains, there can be no recovery, even though the train operatives failed in their duty to give the statutory signals for the crossing. White, Personal Injuries, § 1009. And an instruction which leaves it open to the jury to infer that it would not be negligence to fail to look and listen for approaching trains where such statutory signals are not given, is erroneous. 88 Ark. 524; 78 Ark. 55; 92 Ark. 437. It is well settled that one who attempts to cross a railroad track without looking for an approaching train in plain view, is guilty of such contributory negligence as will prevent recovery. 62 Ark. 156; 61 Ark. 549; 91 Ark. 14; 97 Ark. 438; 101 Ark. 315. See also 69 Ark. 134; 125 Am. St. 876; 64 Mich. 93; 96 Ark. 638; 69 Mich. 109; 59 N. Y. 468; 106 Ark. 390; 45 S. E. 817.

2. Where the undisputed testimony shows that a man of ordinary intelligence and in possession of all his faculties, went upon the main track of a railroad in front of a train approaching in plain view, without looking or listening, he was negligent, as a matter of law, and it is error under such evidence to submit the question of his contributory negligence to the jury. 56 Ark. 457; 61 Ark. 549; 62 Ark. 156; 76 Ark. 224; 65 Ark. 235; 69 Ark. 135.

3. The thirteenth instruction was abstract and misleading. Moreover, there was no evidence tending to prove that deceased gave more attention to the north end of the track than to the south end, but that he was not looking in either direction, nor listening.

4. The court erred in giving instructions 15 and 17, and in refusing instructions proposed by appellant, stating the law correctly as it stood before the amendment of the lookout statute in 1911. That amendment had no emergency clause, and did not go into effect until ninety days after the adjournment of the Legislature. 103 Ark. 48.

*George & Butler* and *Mehaffy, Reid & Mehaffy*, for appellee.

1. The question presented here is, does this case fall within the exception where it should be left to the jury whether or not the failure to look and listen both was constituted negligence? 69 Ark. 134.

While the duty as between train operatives and a traveler approaching a crossing is reciprocal, yet, rightfully, the modern tendency is to hold railroads to a stricter accountability in discharging their statutory duties; and the traveler is authorized to assume that the railroad company will obey the law. The omission to ring the bell or sound the whistle "is held to be an assurance of safety to one on the highway, and such failure will have an important bearing upon the conduct of the traveler on the crossing, in estimating the amount of care required of him. 2 White on Pers. Injuries, § 954; 96 Ark. 643; 147 S. W. (Ark.) 50.

A railroad company is not merely bound to avoid injuring pedestrians on a public highway after discovering their peril, but must exercise ordinary care in running their trains thereon. It depends upon the circumstances of each case as to what would constitute negligence on the part of the person injured, and if those circumstances are such as that reasonable men might differ as to whether he did or did not exercise ordinary care, the question should be left to the jury. 126 S. W. 850.

The presumption is that the injured party exercised due care until the contrary appears by the proof. 48 Ark. 460; 78 Ark. 360; 61 Ark. 549; 78 Ark. 355.

2. The testimony shows that the engineer saw deceased at least 320 feet away, that he knew he was going

across the track, and that he evinced no consciousness of the approach of the train. As to whether or not the danger could have been averted after discovering his peril is not in the record; the sole question is, whether the engineer, acting as a reasonably prudent man, under all the circumstances should have assumed that he was in danger, and acted upon that assumption. 151 S. W. 255; 147 S. W. 50.

Smith, J., (after stating the facts). The court gave the jury a number of instructions on the question of contributory negligence, but, we think, under the facts here stated, the jury should have been told, as a matter of law, that deceased was guilty of contributory negligence. Circumstances might be such that a traveler at a crossing would be under no absolute duty to look and listen, and a number of cases discuss the exceptions to the rule requiring one to look and listen, and where the traveler comes within any exception excusing him from the performance of this absolute duty, the jury may consider the failure of the railway company's employees to give signals and warning of the train's approach to the crossing as bearing upon the contributory negligence of the traveler in failing to look and listen. But if there is nothing in the traveler's approach to the crossing which would excuse him from the absolute duty of looking and listening, then the failure to give signals can not be considered upon the question of contributory negligence. *Chitwood* v. *St. Louis, I. M. & S. Ry. Co.,* 104 Ark. 38; *Ark. & La. Ry. Co.* v. *Graves,* 96 Ark. 643; *K. C. So. Ry. Co.* v. *Drew,* 103 Ark. 374; *St. Louis, I. M. & S. Ry. Co.* v. *Prince,* 101 Ark. 316.

The thirteenth instruction, given at the request of the appellee, was as follows: "You are instructed that, while it is the duty of a person about to cross a railway track to look and listen for trains from each direction, where it may be reasonably done under the circumstances, yet, if it appears to him before crossing, as a reasonably prudent person, under the surrounding circumstances, that greater danger is to be apprehended

from one end of the track than the other, he may give more attention to that end of the track from which he, as a reasonably prudent person, under all circumstances, apprehends the greater danger."

Even though it be conceded that this was a proper instruction under the facts of this case, and that deceased had the right to pay the greater attention to the freight engine near him, whose popping off of steam might indicate that it was about to be put in motion, still that right would not excuse the total failure to look in the opposite direction before starting across the track. *St. Louis, I. M. & S. Ry. Co.* v. *Chamberlain,* 105 Ark. 180.

The court gave the following, among other, instructions:

No. 2. "You are instructed that it was the duty of the defendant to ring the bell or sound a whistle at a distance of at least eighty rods from the place where the public crossing crossed the railroad, and to keep said bell ringing or whistle sounding until the crossing is passed; and you are further instructed that, in the absence of some warning or evidence to the contrary, the deceased had a right to assume that the defendant would cause the bell to ring or the whistle to sound, giving warning of the approach of its train, and if you find from the evidence in this case that the train which struck and killed the deceased, while he himself was in the exercise of ordinary care, your verdict must be for plaintiff."

No. 15. "You are further instructed that, notwithstanding contributory negligence, if you find such to have existed upon the part of deceased, in going upon the railroad track of the defendant at the place and time he did, yet, if you further find that the employees of defendant's train discovered his peril, or could have discovered his peril by keeping the lookout elsewhere defined in these instructions, it became the duty to sound the whistle or ring the bell, or lessen the speed of the train, and make use of all reasonable means within their power consistent with safe operation of the train to avoid striking the deceased; and if they failed to exercise any of these pre-

cautions after having discovered his peril, or could have discovered such peril by keeping a proper lookout in time to have prevented the injury, and that his injury was caused by such failure, you will find for the plaintiff.''

No. 17. ''You are instructed that it is unlawful for any railroad company owning or operating freight trains to suffer or permit the same to remain standing across any public highway, street, alley or farm crossing, or, when it becomes necessary to stop such trains across any public highway, street, alley or farm crossing for more than ten minutes, and fails to leave a space of sixty feet across such public highway, street, alley or farm crossing. You are instructed that the above requirement fixes the standard of care by which the conduct of the railroad company must be tested, and a failure in this respect is negligence which renders the company liable for any injury which results as a direct consequence therefrom.''

We think the court erred in the giving of each of these instructions. The second is erroneous because the jury might have understood from it that, in determining whether deceased was guilty of contributory negligence in failing to look and listen, they had the right to consider the failure to ring the bell or blow the whistle, while, as we have stated, under the evidence in this case, the duty to look was an absolute one, and was not excused by the appellant's failure to give signals.

The fifteenth instruction was not the law prior to the passage of Act No. 284, page 275, of the Acts of 1911. This act is the amended lookout statute, and was approved on May 26, 1911, which was three days before Mr. Roddy was killed. But the regular session of 1911 ended on June 2, 1911, and, as the statute contained no emergency clause, it did not go into effect until ninety days after June 2, 1911. *Ark. Tax Commission* v. *Moore,* 103 Ark. 48.

Prior to this act, contributory negligence was a defense against the negligent failure to keep a lookout, where the peril had not been discovered in time to have avoided the injury by the exercise of due care thereafter.

*Johnson* v. *Stewart,* 62 Ark. 164; *St. Louis, I. M. & S. Ry. Co.* v. *Leathers,* 62 Ark. 238.

The seventeenth instruction should not have been given because the jury may have taken it as a direction to find appellant guilty of negligence, if they found the crossing had been obstructed for more than ten minutes. The obstruction of the crossing was not the proximate cause of the injury.

Notwithstanding the fact that this cause must be reversed, and that the jury should have been told, under this evidence, that deceased was guilty of contributory negligence, it does not follow that the cause must be dismissed. The engineer on the passenger train admits that he saw the deceased for a distance of 300 to 320 feet, and that he had shut off steam, and was rolling along at a rate not to exceed twenty miles an hour, and that he was getting ready to stop at the depot which is 738 feet north of the crossing where Mr. Roddy was killed. The engineer saw Mr. Roddy distinctly, and observed and described his apparel, and he further testified, "He was going along attending to his business. I saw him. I made no effort to alarm him, because the man had measured the distance, and I presumed, would cross all right. I could have gotten across all right, the distance I was from him about the time I first saw him." One witness testified that as Mr. Roddy came around the cars on the house track and around the freight engine on the passing track to the main line track, he described a part of a letter "S," and all witnesses who saw him just before he was struck, say that his head was turned to the right as if he was devoting his attention to the freight engine, and the engineer on the freight train testified that he hallooed at Mr. Roddy, and as he did so, Mr. Roddy jumped, but was struck by the passenger engine.

We think it a question of fact, for submission to a jury, whether the passenger engineer was guilty of negligence after discovering Roddy's peril in taking chances on his getting to a place of safety, and whether the engineer should not have attempted, either to slacken his

train, or to give warning of its approach by proper signals. *Garrison* v. *St. Louis, I. M. & S. Ry. Co.*, 92 Ark. 445; *Majors* v. *St. Louis, I. M. & S. Ry. Co.*, 95 Ark. 94.

For the errors indicated, the judgment is reversed and the cause remanded for a new trial.