THOMPSON *v.* STATE.

Opinion delivered January 23, 1922.

1. STATUTES—TIME OF TAKING EFFECT.—Amendment 7 of the Constitution, providing for reference of legislative acts to the people by petition, applies to local as well as general legislation, and, in the absence of an emergency clause, an act detaching territory

from one school district and annexing it to another does not go into effect until 90 days after final adjournment of the Legislature, the time allowed by such amendment for filing a referendum petition.

2. MALICIOUS MISCHIEF—AUTHORITY OF SCHOOL DIRECTORS.—Where the directors of a rural school district, after the Legislature had passed a special act detaching a strip from the district and annexing it to another district, in good faith passed a resolution to remove a schoolhouse from the strip, persons who proceeded to tear down the building in pursuance of such resolution before the special act went into effect were not guilty of a misdemeanor under Crawford & Moses' Dig., § 2542, making it a misdemeanor to damage a schoolhouse; it being within the authority of school directors to change the site of schoolhouses, under Crawford & Moses' Dig., §§ 8942-3.

3. MALICIOUS MISCHIEF—RIGHT OF CHURCH TO USE SCHOOLHOUSE.— Permission to a church to use a school building for religious services is a revocable privilege, and persons tearing down a school building used by a church organization are not criminally responsible under Crawford & Moses' Dig., § 2542, for damaging church property, where they were acting under a resolution of the school board.

Appeal from Lonoke Circuit Court; *George W. Clark,* Judge; reversed.

*William & Holloway,* and *Guy E. Williams,* for appellant.

The evidence discloses no malicious intent. McClain's Crim. Law, § 826; 30 Ark. 433, 435; 48 *Id.* 56, 3 Am. St. Rep. 216; 35 Ark. 345.

There can be no criminal liability for acts done in good faith under supposed right or claim of authority. McClain, Crim. Law §§ 827-828; 25 Cyc. 1677-1678. The property necessarily belonged to Rural Special School District No. 20, when the offense is alleged to have been committed. The act transferring the territory did not go into effect until June 28, 1921. 36 Cyc. 1192; 104 Ark. 162; 103 *Id.* 48; 145 S. W. 199; 101 Ark. 473; 142 S. W. 1153; 200 S. W. 501.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

Where one is accused of violating this statute, C. & M. Digest, § 2542, it is not necessary either to allege or prove malicious intent on the part of the accused against any preson, or persons, intended to injure any specific individual or many individuals. 113 Ark. 97.

The church organization and the church-going public had such an interest in- the building as would authorize the prosecution of any one injuring the same in the manner prohibited by the statute. 113 Ark. 97; C. & M. Dig., § 3018.

McCulloch, C. J. Appellants, Will Thompson and fifteen other citizens of Lonoke County, were arrested and tried before a justice of the peace of that county on an information charging them with damaging and destroying a certain building known as "Mason School-house and Pleasant View General Baptist Church." The charge is preferred under the statute which makes it a misdemeanor punishable by fine of not exceeding $100 for any person to "cut, write upon, deface, disfigure or damage any part or appurtenance of the inclosure of the Statehouse, or any building belonging to the State, or of any church or schoolhouse, or any other public building, or to any citizen of this State, when not occupied." Crawford & Moses' Digest, § 2542. An appeal was prosecuted from the judgment of the justice of the peace, and on the trial in the circuit court a verdict of guilty was returned against appellants on direction of the court.

The building shown to have been damaged was one situated on school property, and it was erected and used as a schoolhouse by the district in which it was located, but the testimony tends to show that contributions were made by members of the church mentioned above toward the improvement of the property, and that it was sometimes used for church purposes. The building was situated within the bounds of a rural single school district des-

ignated as Rural Special School District No. 20, and was one of the schoolhouses in which public schools were taught in that district. There were three schoolhouses in the district, the one involved in this controversy being known as Mason schoolhouse, situated on the east side of said district. Another building known as Hill Schoolhouse was situated on the west side of the district, and the other building, known as Hickory Valley Schoolhouse, was situated at or near the central portion of the district.

The General Assembly at the session of 1921 enacted a special statute detaching from Rural Special District No. 20 a strip on the east side of the district a mile wide and two and a-half miles long, which embraced the land on which Mason Schoolhouse was situated, and annexed it to an adjoining single school district known as Oakdale Special District. By the same statute a strip of land on the west side of rural special school district on which the Hill Schoolhouse was situated, was detached and annexed to another single school district, thus leaving only one school building (Hickory Valley Schoolhouse) in rural special school district. This statute was approved by the Governor on March 28, 1921, and provided that it should go into effect 90 days from and after its passage. There was no emergency clause attached to the bill.

Six of the appellants constituted the board of directors of rural special school district, and they claimed to have held a meeting on the night of April 12, 1921, and passed a resolution directing that Mason Schoolhouse and Hill Schoolhouse should be torn down and the materials moved and used in the construction of another school building on the land which would, under the new statute, remain in the territory of rural special school district. On the next day the directors, together with the other appellants, who were residents and taxpayers within the boundaries of rural special school district, met at Mason Schoolhouse and proceeded to tear down

the building and fences and to remove the material together with the benches and other movable property in the building. The evidence shows that up to the time they were arrested they tore out the windows, window-facings, doors and door-facings and part of the ceiling and removed them, and also tore down the fence and removed the material. The benches and certain other things in the building were also removed. Appellants testified that they were tearing down the building and moving the material in pursuance of the resolution passed by the board of directors.

The court erred in directing a verdict, as the testimony tended to show that the board of directors passed the resolution mentioned above, and that the directors, together with other appellants, were carrying out that resolution in tearing down the building. The building remained the property of rural special school district, notwithstanding the passage of the statute detaching that territory from the district, for the statute had not become effective, and the control of the directors of the district over that property was at that time unaffected by the new statute. The Constitution of this State, as changed by amendment adopted at the general election of 1910, provides for a reference of legislation to a vote of the people upon a petition signed by five per centum of the legal voters of the State filed with the Secretary of State not more than 90 days after the final adjournment of the session of the Legislature which passed the bill. Unless an emergency is declared in the bill, it does not go into effect until three months after the final adjournment of the Legislature. *Arkansas Tax Commission* v. *Moore,* 103 Ark. 48. We decided in *Hodges* v. *Dawdy,* 104 Ark. 583, that the Constitution, as amended, does not confer power upon the voters of a municipality or county to initiate legislation, but we have never decided that, under the amendment mentioned above, local legislation cannot be initiated or referred by petition to a vote of the people of the State as a whole. On

the contrary, we hold that local legislation may be initiated or there may be a referendum of such legislation, provided it is referred to the vote of the people of the whole State and the petition therefor is signed by the percentage of voters of the whole State as prescribed in the amendment. This being true, the statute detaching territory from rural special school district was not in effect at the time the damage was done by appellants to the school building, and therefore it remained as the property of that district, and was within the control of the directors. The fact that the property would soon pass to another district if a referendum vote should not be ordered did not take away the power of the directors to manage and control this property the same as any other property of the district. In other words, until the time had passed for a referendum of the new statute, the directors had the same power over the property that they had before the statute was enacted and approved by the Governor. The question of abuse of that discretion, and the legal or equitable right of the citizens of another district to restrain such abuse is not involved in the present controversy, the present proceedings being a criminal prosecution for a statutory offense which does not involve the motives of the accused. It is within the statutory authority of the directors to change the site of schoolhouses and to sell one site and purchase another. Crawford & Moses' Digest, §§ 8942, 8943.

It was, we think, a question of fact in this case to be determined by the jury whether the attempted removal of the school building was being done pursuant to the resolution adopted by the directors, or whether the resolution, if adopted, was merely colorable, and that appellants were attempting to tear down and remove the building, not pursuant to the resolution, but merely for the purpose of destroying the property to thwart the legislative will. This issue should not have been taken from the jury by a peremptory instruction.

According to the undisputed evidence, the building in question was not church property, but was exclusively the property of the school district. The statute gives no authority to a school district to permit other organizations to construct buildings on school lands, and the right of a church organization to hold services in the building was, at most, a mere privilege which could be revoked at any time, and the directors of the school district and those acting under their direction were not criminally responsible for the damage done to the property without the consent of the church organization.

The judgment of the circuit court is therefore reversed, and the case remanded for a new trial.

SMITH, J., dissents.