GASTER v. DERMOTT-COLLINS ROAD IMPROVEMENT DISTRICT.

Opinion delivered January 22, 1923.

1. STATUTES—TIME OF TAKING EFFECT.—Under Const. art. 5, § 1, as amended by amend. No. 7, and act No. 2 of Ex. Sess. 1911, carrying such amendment into effect, held, an act without an emergency clause does not become operative until 90 days after the adjournment of the. Legislature.

2. HIGHWAYS—ELECTION TO APPROVE CREATION OF DISTRICT—VALIDITY.—Under act 240 of Sp. Sess. of 1911, creating the Dermott-Collins Road Improvement District, which provided that it should not become operative until approved at a special election, held that an election conducted before 90 days had expired after the adjournment of the Legislature, at which time the act went into effect, was premature and void.

3. EVIDENCE—JUDICIAL NOTICE OF SPECIAL ELECTIONS.—The courts cannot take judicial notice as to when elections are held under special acts of the Legislature.

4. STATUTES—REFERENDUM—LEGISLATIVE POWER.—It is not within the power of the Legislature to deprive the voters of the right under the Constitution to have all laws referred to them except those necessary for the immediate preservation of the public peace, health or safety, and therefore it cannot be held §§ 36 and 37 of act 240 of Sp. Sess. of 1911, providing for a special election by voters of the district for the adoption or rejection of the act was a referendum pursuant to Crawford & Moses' Dig., § 9767.

5. HIGHWAYS—IMPROVEMENT DISTRICT—LIMITATION.—Where an election was held under act 240 of Sp. Sess. 1911 before the act became operative, § 11 of such act limiting the time for attacking assessments was inapplicable to assessments made pursuant to such premature election; such assessment being void.

Appeal from Chicot Chancery Court; *E. P. Toney,* special chancellor; reversed.

*Golden & Golden,* for appellant.

The act in question has never become operative because the election called for the approval thereof was unauthorized and void. 104 Ark. 583; 110 Ark. 528; 117 Ark. 266; 151 Ark. 369. The commissioners had no right to change the plans and specifications after the petitions were filed. 150 Ark. 379; 230 S. W. 11; 135 Ark. 102; 120 Ark. 277; 142 Ark. 509; 133 Ark. 491.

*John Baxter,* for appellee.

*Henry & Harris, amici curiae.*

WOOD, J. This is an action by the appellant, a resident taxpayer in Dermott-Collins Road Improvement District, against the district and its commissioners to restrain them from collecting assessments, selling bonds, and from proceeding with the construction of the improvement for which the district was created. The district and its commissioners will hereafter be called appellee.

The appellant, after alleging that he is a landowner and taxpayer within the boundaries of the district, set up that the appellee was attempting to collect the first installment of assessment of benefits that had been levied by the appellee against his land. Appellant challenged the authority of the appellee to collect the assessment on the following grounds, to wit: "(1). The act creating the district has never become operative. (2). The district has no right to spend more than $200,000 in the construction of the road. (3). If the plans and specifications are changed, the assessments already made will be void."

After a consideration of the record the conclusion we have reached makes it unnecessary to consider any but the first ground.

Appellee district was created by act No. 240 of the extraordinary session of the General Assembly of the State of Arkansas, approved February 20, 1920. The last two sections of the act are as follows:

"Sec. 36.    This act shall not become effective until the same has been approved by a majority of the qualified electors residing within the district and voting at a special election to be called by the chancery judge of the Second Chancery District of the State of Arkansas. Said chancery judge shall have full power to call said election on a day to be fixed by him, and he shall designate the polling precincts, appoint judges and clerks, and make such other orders as are necessary for the proper conduct of the election.    Returns from said election shall be presented to said chancery judge within three days after said election, and any contest of the election shall be heard before him, provided same is filed within ten days after the election, and his certificate of the return of the election filed with the chancery clerk of Drew and Chicot Counties shall be conclusive proof upon all parties as to the result of the election."

"Sec. 37.    All laws and parts of laws in conflict herewith are hereby repealed, and this act shall take effect and be in force from and after its adoption at the special election hereinbefore referred to."

It will be observed that the emergency clause is not attached to the act.

Under article 5, § 1 of the Constitution of the State of Arkansas as amended by Constitutional Amendment No. 7 (Crawford & Moses' Digest, p. 131) and put into effect by act No. 2 of the General Assembly of the State of Arkansas, approved June 30, 1911, no act becomes operative, unless the emergency clause is attached thereto, until ninety days after the adjournment of the General Assembly.    "All legislative enactments except those necessary for the immediate preservation of the public peace, health and safety, are subject to the operation of the initiative and referendum and do not go into effect until the expiration of ninety days after final adjournment of the Legislature."    *Ark. Tax Com.* v. *Moore,* 103 Ark. 48; Amend. No. 10, digested as Amend. No. 7, Crawford & Moses' Digest, *supra; Fenolio* v. *Se-*

*bastian Road Dist.,* 133 Ark. 380. Until the expiration of such time, the voters, under the referendum clause of the Constitution, had the power to refer the act to the people as a whole for approval or rejection thereof at the next general election. Crawford & Moses' Digest, p. 131; Const. article 5, § 1, and amend. No. 7; *Thompson* v. *State,* 151 Ark. 369. See also *Hodges* v. *Dawdy,* 104 Ark. 583; *Tomlinson Bros.* v. *Hodges,* 110 Ark. 528; *Hodges* v. *Board of Imp.,* 117 Ark. 266.

It is conceded by counsel for the appellee that the election under which the act creating the district was to become operative was held on March 27, 1920. This election was without authority of law and therefore void, because at the time it was held the act authorizing such an election itself had not become a law. Since the act itself which authorized the people to approve the same by an election did not go into effect until after such election, it is manifest that the chancery judge had no authority under the act to call the election for March 27, 1920, and that the election held under such call was premature and void. *Van Hook* v. *Wallace,* 143 Ark. 203. In *Thompson* v. *Trice,* 145 Ark. 143, we held that "the Legislature cannot delegate to another its power to enact laws, but may make the enforcement of the law dependent upon a condition or contingency. The law was made by the Legislature to become operative upon condition of its adoption by a majority of the qualified voters in the district." In that case the constitutionality of the act now under review was challenged; also the constitutionality of the act and the validity of the assessments thereunder were attacked in the recent case of *Bulloch* v. *Dermott-Collins Road Imp. Dist.,* 155 Ark. 176. But the issue here raised was not drawn to the attention of the court in those cases.

In *Fenolio* v. *District, supra,* we had under review an act creating an improvement district and containing provisions for an election to be held within two years from the passage of the act for the approval of the act

by the people of the district. In that case the court said: "The act was approved February 26, 1913, but it did not declare the existence of an emergency, and therefore went into effect ninety days after the adjournment of the Legislature, according to the referendum clause of the Constitution."

This court cannot take judicial knowledge of the time when elections are held under special acts of the Legislature. Therefore, since our attention was not called to the time when the election was held for the approval of the act now under review by the people of the district, the former cases in which we upheld the validity of the act are not decisive of the issue here for the first time presented.

But the appellee contends that the Legislature itself ordered the referendum on the act; that sections 36 and 37, providing for the special election for the adoption or rejection of the act by the majority of the voters of the district, were tantamount to a referendum of the act by the Legislature. Section 9767 is as follows: "The General Assembly may order the referendum upon any measure enacted thereby, and the same shall be voted upon and the result of the vote thereon declared in the same manner as measures upon which the referendum has been ordered by petition, or at such time and in such manner as the General Assembly may direct." The act under review, of which sections 36 and 37 are a part, was the subject of a referendum to the voters of the whole State under Amendment No. 7, *supra,* of the Constitution, because the emergency clause was not attached to the act. *Thompson* v. *State, supra.* It is not within the power of the Legislature to deprive the people of the right under the Constitution to have all laws referred to them, except those laws necessary for the immediate preservation of the public peace, health or safety. Since the emergency clause was not attached to the act showing the existence of an emergency, the act was the subject of a referendum under Amendment No. 7 of the Constitution, *supra,*

and did not become operative until ninety days after the Legislature adjourned.

To hold that sections 36 and 37 were equivalent to a referendum by the General Assembly would render the whole act unconstitutional.

Appellee further contends that appellant cannot maintain this action because of section 11 of the act, which reads as follows: "Any party who may have complained in writing of any of said assessments of benefits or damages, and who feels aggrieved by the action of the commissioners after the hearing herein provided for, and any other person whomsoever who may have any objection to any assessment of benefits or damages, or to any other proceedings under this act, or action of the commissioners, shall file his complaint thereof in the chancery court having jurisdiction within thirty days after the hearing by the commissioners herein provided for, and any party not complaining within that time shall be deemed to have waived any objection he may have thereto of any assessment of benefits or damages, and shall not be heard to complain in law or equity thereafter; and no suit shall thereafter be brought in any court attacking the validity of any of said assessments of benefits or damages."

This section can not avail appellee as a defense to appellant's action because, as we have shown, the act itself has not yet become effective. Before the act can become operative, there must be an election held at which a majority of the qualified electors residing within the district approve the act. Such an election has not yet been held. The holding of an election before such time and before there was any law under which an election could be held was not a mere irregularity, but a fundamental step wholly unauthorized by law, and therefore not binding on the taxpayers of the district upon whose property assessments have been levied to pay for the contemplated improvement.

We conclude therefore that the assessment which the appellee is attempting to collect from the appellant is without authority of law and void. The decree of the chancery court holding otherwise is reversed and the cause is remanded, with direction to enjoin the appellee from collecting any assessment against appellant and from further proceeding under act 240 until same shall have become effective in the manner therein provided.

McCULLOCH, C. J., (dissenting). The holding of the election before the statute became effective was a mere irregularity, and was too late, after the approval of assessments and notice thereof, to raise the question of the election not having been properly held. The manifest purpose of the lawmakers was to base the operation of the statute upon obtaining the consent of the electors, and an election held before the expiration of the referendum period was just as effective for that purpose as one held thereafter.

SMITH, J., concurs.